**Stella V. BOODOO, et al.,**
**Plaintiffs–Appellants,**

v.

**Jerome CARY; Washington Metropolitan**
**Area Transit Authority, Defendants–**
**Appellees.**

**Nos. 92–7203, 92–7204.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1994.

Decided April 26, 1994.

J. Lincoln Woodard, Washington, DC, argued the cause and filed the brief, for appellants.

Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, DC, argued the cause, for appellees. With him on the brief were Robert L. Polk, Gen. Counsel, Washington Metropolitan Area Transit Authority, and Robert J. Kniaz, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, DC. Linda Lazarus, Washington, DC, entered an appearance.

Before: EDWARDS, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case arises from a tragic automobile accident in which one person was killed and another seriously injured. The accident occurred early one September morning on Bladensburg Road in Prince George's County, Maryland. On that morning, a Washington Metropolitan Transit Authority bus ("Metrobus") was travelling northbound when it hit a Chevrolet Camaro that was turning across the northbound lane from the southbound lane. As a result of the collision, the Camaro was split in half; a passenger in the front seat of the car, Rose Marie Johnson, was killed; and a passenger in the rear seat, nine-year-old Ruskin Quanyoung, Jr., was injured.

The decedent's personal representative, Stella Boodoo, and Quanyoung, joined by his father, sued in District Court for wrongful death and personal injury, respectively. Metro was named as a defendant in both lawsuits. Metro, in turn, filed a third-party action against the driver of the car. The District Court consolidated these actions, with the liability issues tried before a jury, and the damages portion of the case reserved for a separate proceeding.

At trial, both parties presented accident reconstruction experts, qualified to offer their opinions on the causes of the accident. Plaintiffs' expert, Dr. Yau Wu, testified that, based on his analysis, the Metrobus had exceeded the posted speed limit by approximately 20 miles per hour; Dr. Wu testified further that, in his opinion, the accident would not have occurred if the bus had not been speeding. Defendant's expert disagreed with Dr. Wu, testifying that his own analysis indicated that excessive speed was not a cause of the accident because, in his opinion, the collision would have occurred even if the bus was within the posted speed limit.

The jury returned a verdict for the plaintiffs, apparently believing that the bus was

speeding and that the excessive speed was a cause of the accident. The trial judge, however, entered a judgment as a matter of law for Metro, holding plaintiffs failed to prove proximate cause. In taking the case from the jury and rendering judgment for Metro, the trial judge was convinced that Dr. Wu had conceded under cross-examination that the accident would have occurred even if the bus was travelling the posted speed limit.

We hold that the trial judge erred in entering a judgment contrary to the jury's verdict. A thorough review of the record reveals that Dr. Wu consistently maintained at trial that the accident was rendered unavoidable by the excessive speed of the Metrobus. Reading Dr. Wu's testimony as a whole, we find he did not concede that the Metrobus accident would have occurred even if the bus were moving 30 miles per hour ("m.p.h."). And giving the benefit of all favorable factual inferences to appellants, we believe that a reasonable jury fairly could have found that excessive speed was the proximate cause of the collision. We therefore reverse the judgment of the District Court, reinstate the jury's verdict, and remand the case for a determination of damages.

## I. BACKGROUND

### A. *The Accident*

On September 1, 1989, a Metrobus collided with a Chevrolet Camaro. At the time of the accident, the Metrobus was travelling northbound on Bladensburg Road in Prince George's County, Maryland. Bladensburg Road has five lanes where the accident took place; two lanes are for northbound traffic, two lanes are for southbound traffic, and the center lane is for left turns from either direction. *See* Trial Transcript II ("Tr.") at 18. The speed limit along the roadway was 30 m.p.h.

The Camaro was struck as it turned left from the southbound lane into the path of the Metrobus. The force of the collision split the Camaro in half, and front-seat passenger Rose Marie Johnson was killed. Ruskin Quanyoung, Jr. was asleep in the rear seat of the car and was seriously injured.

### B. *The Proceeding Below*

Quanyoung and Stella Boodoo—the mother and personal representative of the deceased—filed suit in District Court. The plaintiffs alleged that Metro, among others, was responsible for the wrongful death of Rose Marie Johnson and for the personal injuries suffered by Quanyoung.. In turn, Metro filed a third-party complaint for contribution against the driver of the Camaro. The District Court consolidated these actions, and on January 8, 1992, entered a default judgment against the Camaro driver in favor of Metro. Washington Metropolitan Transit Authority Appendix ("Metro App.") 75. In February 1992, a five-day jury trial was held on the liability issues.

At trial, both sides relied heavily on accident reconstruction experts. Plaintiffs' expert, Dr. Yau Wu, was called to reconstruct the accident and to present his opinion on what caused it. The first step in Dr. Wu's analysis was to identify the point where the two vehicles collided ("point of impact"). He based his determination on several factors: First, Wu noted a point where the skid marks shifted angles on the pavement—this he attributed to the impact. Tr. II at 126. Second, Wu testified that gouge marks, left from portions of the car being trapped beneath the bus, appeared, as he would expect, some 10 feet from the point of impact. Tr. II at 127, 147. Third, Dr. Wu took into account the location where various pieces of the car came to rest, and the relative weight disparity between the much heavier bus and the lighter car. Tr. II at 102–103, III at 20–21.

In the second step of his testimony, Dr. Wu analyzed the skid marks left from the accident. On this point, Dr. Wu relied on the original police report prepared by Officer Richard Ratcliff, which depicted a continuous skid mark of 150 feet on the road, and photographs of the scene. Dr. Wu described the 150 foot skid as involving three components: (1) 20 feet of pre-impact skid marks; (2) 10 feet of impact marks; and (3) 120 feet of post-impact marks. Tr. II at 116. From the skid marks, Dr. Wu was able to calculate, using standard mathematical methods, the approximate speed the bus must have been travelling. Dr. Wu opined that the pre-im-

pact speed of the bus was 48.3 m.p.h., that the speed during impact was 44 m.p.h. and that the post-impact speed was 42.27 m.p.h. Tr. II at 121, 123–24.

Dr. Wu assumed an average perception, reaction, brake-activation time ("PRB"), in order to calculate how far the Metrobus was from the Camaro when the driver started to react to the danger of a collision. As he explained at trial, PRB is the normal time it takes a driver to perceive and react to an identified danger, plus the time it takes for the brakes to engage. In Dr. Wu's opinion, a normal person takes one second to perceive a danger ("P"), one second to react to that danger ("R"), and it takes one-half of a second for the brakes of a Metrobus to activate ("B"). Tr. II at 130, 131. Assuming such reaction times, it would have taken about 2.5 seconds (P + R + B) for the bus to begin skidding. Dr. Wu assumed that in this case the Metrobus driver and bus reacted normally to the emergency.

Using his estimated speed of 50 m.p.h. and the normal PRB time (2.5), Dr. Wu was able to estimate the distance the bus travelled before its brakes locked. Because a vehicle moving 50 m.p.h. travels 74 feet per second ("ft./s"), the bus travelled approximately 185 feet (2.5 × 74) before it started to skid. Dr. Wu thus concluded that the driver must have perceived the accident 190 feet before the bus' brakes locked.[1] Tr. II at 131–32.

Based on the preceding analysis, Dr. Wu concluded that excessive speed was one of the causes of the accident. Relying on his estimate that the distance from perception to brake-activation was 190 feet, Dr. Wu opined that had the bus been going 30 m.p.h., it would have been able to avoid the accident, because at that speed the bus would have required only 131 feet to stop (2.5 PRB × 44 ft./s + 21 feet of skidding before the bus stops) after the driver first perceived the danger—well short of the point of impact reached by the Metrobus travelling 50 m.p.h. Tr. II at 142.

On cross-examination, defense counsel attempted to get Dr. Wu to concede the acci-

dent would have occurred even if the Metrobus were moving at the 30 m.p.h. speed limit:

> I want you to make the following assumptions: I want you to assume that pre-impact, like you said . . . earlier, that there are 20 feet of skids to the point of impact, and I want to use a .7 coefficient of friction, which you stated earlier was the coefficient of friction you used, and I want you to assume that the bus was going 30 miles an hour before it started to brake. . . . Isn't it a fact that when I took your deposition, you went through a similar computation and told me that even if the bus was going 30 miles an hour, there would have been an impact?

Tr. II at 165, 166. Dr. Wu agreed that the collision hypothesized by counsel would have occurred at 30 m.p.h. During redirect examination, however, *Dr. Wu explained that his understanding of the hypothetical was that the bus was only 20 feet away from the Camaro when its brakes locked.* Tr. III at 19. With such a short distance to stop, Dr. Wu readily acknowledged that a bus under those circumstances would be unable to avoid an accident. Wu made clear, however, that he believed, given the distance available for the driver to react *in this case,* that the Metrobus could have avoided a collision if it had been going the speed limit. *Id.* This was so, because a bus driver first reacting over 190 feet from the Camaro would have locked the brakes much further than 20 feet away from the car if he were driving only 30 m.p.h.

Metro presented Bruce Enz as its expert. Contrary to Dr. Wu, Enz testified that the skid marks shown in the photographs all occurred after the point of impact. Tr. IV at 23. He stated his belief that there were only 72 feet of skid marks from one side of the bus and 52 feet from the other. Tr. IV at 25. Enz did not agree with Dr. Wu that the pre-impact skid marks were related to this accident, and testified that in his opinion the relevant skid marks did not begin until 30 to 40 feet after impact. Tr. IV at 29. Additionally, Enz believed that the distance from the bus to the point where the car first entered its path was also 30 to 40 feet, as opposed to

---

**1.** We assume Dr. Wu rounded 185 feet up to 190 feet.

the 190 feet suggested by Dr. Wu. *Id.* Employing a different factual predicate than that used by Dr. Wu, Enz concluded that the bus would have collided with the car even at 30 m.p.h. and thus the single cause of the accident was the sudden turn by the Camaro. Tr. IV at 36.

During the trial, Metro moved for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 both at the conclusion of plaintiffs' case and again at the conclusion of all the evidence. The trial judge deferred his ruling on both motions. The jury returned a verdict in favor of the plaintiffs, finding through special interrogatories that Metro was negligent and that its negligence proximately caused the accident.

Metro renewed its motion for a judgment as a matter of law, and the District Court granted it, entering a judgment for Metro. *See* August 31, 1992 Order, *reprinted in* Metro App. 78. Central to the trial judge's ruling was his view that Dr. Wu agreed with Metro's expert that the accident would have occurred even if the bus were travelling the speed limit. Thus, he concluded there was insufficient evidence to support plaintiffs' theory that the bus' excessive speed was the proximate cause of the collision. *Id.* at Metro App. 81–82.

## II. DISCUSSION

■ Because a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored. We have repeatedly emphasized that "[t]he jury's verdict must stand unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 640–41 (D.C.Cir.1988) (internal quotations and citation omitted); *accord Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 827 (D.C.Cir.1988), *cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989). The court may not substitute its judgment for that of the jury: it neither assesses witness credibility nor weighs evidence. *See Coburn v. Pan Am. World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78

L.Ed.2d 683 (1983). Our task is limited to evaluating whether appellant proffered "*sufficient evidence* upon which a jury could properly base a verdict" for appellant. *Richardson,* 857 F.2d at 828 (emphasis in original). Having combed the record, we conclude that there clearly was sufficient evidence presented from which the jury could properly have concluded that excessive speed was a proximate cause of either the accident itself or, alternatively, the aggravated injuries suffered by appellants. Therefore, we reverse the judgment of the District Court, reinstate the jury's verdict and remand for further proceedings to determine damages.

### A. Excessive Speed as the Proximate Cause of the Accident

■ It appears that the sole basis for the trial judge's decision to grant appellee's motion for a judgment as a matter of law was his belief that appellants' expert conceded that the collision would have occurred even if the Metrobus had been travelling 30 m.p.h., the proper speed limit. Seeing no dispute on this issue, the trial judge held that appellants failed to prove proximate cause, a required element of negligence. We cannot agree. As the trial judge correctly noted, whether the bus' excessive speed "proximately caused the collision ordinarily [is] ... a question of fact," and only if it is absolutely clear that the driver's negligence could not have been a proximate cause is it a question of law. *See* Memorandum Opinion, Metro App. 81 (citing *Belle Isle Cab Co., Inc. v. Pruitt,* 187 Md. 174, 49 A.2d 537, 540 (1946)). On the record in this case, it is far from "absolutely clear" that the accident would have taken place even had the Metrobus been travelling the posted speed limit. Whether the accident was inevitable at the lower speed hinges on factual variables that were clearly in dispute at trial, and thus the question whether excessive speed was a proximate cause of the collision was properly one for the jury to decide. We therefore reverse.

We begin by recognizing those facts that we must construe in appellants' favor. First, we accept that the Metrobus in this case was travelling approximately 50 m.p.h. when it began skidding. The jury plainly accepted

appellants' proof on this point, and both the trial judge and Metro conceded that the evidence was sufficient to support this conclusion. *See id.* ("There was a factual dispute as to whether the bus was speeding immediately prior to the collision. The jury apparently determined that the driver was exceeding the speed limit and that determination certainly is fairly supported by the evidence in the case."); Brief for Appellee at 17 ("WMATA acknowledges ... that the jury's determination that the bus driver exceeded the speed limit was supported by legally sufficient evidence."). Second, while there was a factual dispute at trial as to the origin of many of the skid marks identified on the scene, there is sufficient evidence to support the determination by appellants' expert, Dr. Wu, that the Metrobus left 20 feet of skid marks before hitting the Camaro ("pre-impact skid marks"). Third, both parties' experts generally agreed that 2.5 seconds was the approximate PRB time.

The disputed issue in this appeal is whether, taking the factual predicates of Dr. Wu's analysis as true, only one conclusion is reasonable—that the accident could not have been avoided if the Metrobus had been travelling 30 m.p.h. Using Dr. Wu's numbers, if the Metrobus was moving 50 m.p.h. when its brakes locked, then we must also accept that the driver, reacting properly, first perceived the danger of hitting the Camaro at least 185 feet before it began skidding. This is true because a bus moving 50 m.p.h. travels 74 ft./s. Multiplying 74 ft./s by the 2.5 seconds it took for the Metrobus driver to perceive the danger, react, and activate the brakes equals 185 feet (Dr. Wu apparently rounded this number up to 190 feet). Adding this number to 20 (the distance the bus skidded before impact) equals 205 feet—the distance the driver would have been from the crash when he first started to react.

With this information, we can ask the operative question: if the Metrobus had been going 30 m.p.h., rather than 50 m.p.h., could the driver have stopped the bus before it hit the Camaro? Speed is the only variable we can alter, because Dr. Wu's determination that there were 20 feet of pre-impact skid marks is based on sufficient physical evidence, and the distance at which the driver perceived the danger (185 feet from the point the brakes locked in this case) is derived from the *actual* speed of the Metrobus, which even Metro concedes is adequately supported by the record. Having given appellants the benefit of all sustainable factual inferences, we now can consider whether a jury could have found that the excessive speed of the Metrobus proximately caused the accident with the Camaro.

Taking Dr. Wu's testimony in the light most favorable to the plaintiff, which the District Court was obliged to do, mathematical analysis demonstrates that if the Metrobus were travelling the speed limit, there would have been ample time to avoid the crash. It is undisputed that a vehicle going 30 m.p.h. moves 44 ft./s. Multiplying the rate of speed by the 2.5 second PRB time shows that the brakes would have locked 110 feet from where the driver first perceived the possibility of an accident (205 feet from impact in this case) had the Metrobus been going 30 m.p.h. Therefore, unless a 30 m.p.h. bus will skid 95 feet after its brakes lock (205 feet minus 110 feet), a contention no one makes, the Metrobus driver could have avoided the accident had he observed the speed limit.

Dr. Wu's so-called concession, relied upon by the trial judge—that a bus travelling 30 m.p.h. which *locks its brakes 20 feet before impact* would not have been able to avoid colliding with the Camaro—is irrelevant. At several points in his testimony Dr. Wu did indeed suggest that at 30 m.p.h. a bus would leave 21 feet of skid marks before stopping, one foot more than the 20 feet of pre-impact skid marks Wu identified at the scene of this accident. However, this point, as Dr. Wu repeatedly explained, was not a "concession" at all, but merely an accurate response on cross-examination to a flawed hypothetical question posed by counsel for Metro. Counsel asked Wu whether the accident was unavoidable, assuming the bus was going 30 m.p.h. and assuming 20 feet of pre-*impact* skid marks. This hypothetical assumes the result it was designed to prove—that the Metrobus was too close to the Camaro for its driver to avoid a crash, even at 30 m.p.h.

The problem with the question is that it fails to recognize that at the lower speed the Metrobus would not have begun skidding at the same point it did at the higher speed, because the bus would not have travelled as far from the reaction point at the lower speed. Even accepting that a 30 m.p.h. bus might skid over 20 feet, as Dr. Wu seemed to do, that skid would not necessarily be pre-*impact*. Dr. Wu repeatedly explained that the hypothetical was structured using assumptions that made a crash unavoidable at 30 m.p.h., but that he rejected those assumptions as contrary to the evidence.

To determine if the accident was inevitable at the speed limit, thus negating the possibility that excessive speed was a proximate cause, it is not enough to show a 30 m.p.h. bus would skid more than 20 feet. *One must also know when the driver first perceives the danger.* A bus moving 30 m.p.h. will travel a shorter distance in 2.5 seconds than one moving 50 m.p.h. Therefore, if the Metrobus were a substantial distance from the point of impact, the driver would have had plenty of time to react, lock the brakes, skid 21 feet, and stop short of impact. If the bus was closer, then it might be impossible to stop. To be precise, a bus driver travelling 30 m.p.h. when he perceives a car 131 feet or less away (110 ft. PRB time plus 21 ft. skid) will not be able to avoid a collision. This is so because the driver cannot react quickly enough to engage the brakes in time to stop. But, if a bus driver is more than 131 feet away when he perceives danger, he will be able to stop his bus and avoid a crash. In other words, if the Metrobus driver perceived the Camaro at 131 feet or less, excessive speed was not a proximate cause of the collision; but at a greater distance excessive speed might be, as the bus driver could have stopped if he had been going the speed limit. By assuming hypothetically not only that the bus was going 30 m.p.h., but that it began skidding at the same point that the 50 m.p.h. Metrobus in fact did, Metro's counsel also assumed, without any factual basis for doing so, that the bus driver began reacting when the bus was 131 feet from the Camaro.

In contrast, Dr. Wu calculated the distance from perception to brake-lock based on the physical evidence at the accident scene. After analyzing the Metrobus' post-impact skid marks, Wu estimated that the bus was moving 50 m.p.h. He also marked the point where he believed the bus began skidding. Using these factors, he calculated how far the Metrobus travelled in 2.5 seconds (the PRB time), and arrived at 190 feet. There is little doubt that if a bus going 30 m.p.h. locked its brakes at the same point Wu identified for the 50 m.p.h. Metrobus, it would have been unable to avoid the collision. But this tells us nothing, because we do not know whether a 30 m.p.h. vehicle would have locked its brakes at the *same* point as a 50 m.p.h. Metrobus. The answer to that question necessarily depends on how far the bus was from impact when its driver perceived the danger, and that question was clearly in dispute at trial. At trial, appellant offered evidence that the Metrobus driver perceived the Camaro 185 feet from the point at which he locked the brakes. The jury was entitled to accept his expert testimony, and at that distance it is evident a bus could have avoided the collision if it were travelling the speed limit. Therefore, the jury was free to conclude that speeding was a proximate cause of this accident.

### B. The Inapplicability of the "Boulevard Rule"

■ Appellants dedicate a large part of their brief to refuting the applicability of Maryland's "Boulevard Rule." The Court of Appeals of Maryland has described the Boulevard Rule as follows:

> a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls must yield the right of way to all the traffic he finds there during the entire time he is there. If he does not, and a collision results, he is at fault, and cannot recover against the other driver.... So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred.

*Creaser v. Owens,* 267 Md. 238, 297 A.2d 235, 244–45 (1972) (quoting *Shedlock v. Marshall,* 186 Md. 218, 46 A.2d 349 (1946)). Maryland case law indicates that the Boulevard Rule is inapplicable to this case.

In a case nearly identical to this one, the Maryland Court of Special Appeals emphasized that the Boulevard Rule has no relevance when the unfavored driver is not *entering* a favored boulevard from an unfavored roadway:

> We note preliminarily that this case does not involve the Boulevard Rule. That rule is limited in its application to the entrance of an unfavored vehicle onto a favored highway and *does not apply to a turn off a boulevard, even though such a turn may be a left turn across oncoming traffic whereat the turning driver has a statutory duty to yield the right-of-way.*

*Freudenberger v. Copeland,* 15 Md.App. 169, 289 A.2d 604, 607 (1972) (emphasis added). The Metrobus accident here resulted from a "left turn across oncoming traffic whereat the turning driver ha[d] a statutory duty to yield the right-of-way," and thus the Boulevard Rule is inapplicable just as it was in *Freudenberger.* Additionally, when the favored driver is not proceeding in a lawful manner, as is the case here with the speeding Metrobus, the Rule offers no relief. *See Gazvoda v. McCaslin,* 36 Md.App. 604, 375 A.2d 570, 575 (1977).

The trial judge expressly recognized the inapplicability of the Boulevard Rule in this case, *see* Tr. III at 38, and Metro does not assert the Rule's applicability on appeal. Therefore, there is no error to be addressed on this point.

### III.  CONCLUSION

For the foregoing reasons, the judgment as a matter of law entered by the District Court is reversed. The jury's verdict is reinstated and we remand for a determination of damages.

*So ordered.*