44 F.3d 1031
 310 U.S.App.D.C. 142
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Frank SEARS, Appellant,
v.
CAPITOL HILL MANAGEMENT CORPORATION, et al., Appellees.
 No. 93-7089.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 9, 1994.
 
 Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the appeal from the judgment of the District Court granting defendants' motion for judgment as a matter of law, and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying memorandum it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the District Court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellant Frank Sears ("Sears") appeals the District Court's order granting judgment as a matter of law in favor of appellees Capitol Hill Management Corporation ("CHMC"), the District of Columbia, and a Metropolitan police officer. At approximately 10:30 p.m. on the night of December 30, 1988, Sears arrived at the Hawk 'n Dove Restaurant ("Restaurant") in the District of Columbia. Already intoxicated, Sears "charged" past the hostess as he entered the Restaurant. Trial Tr. III at 4, reprinted in Joint Appendix ("J.A.") 254. Approximately twenty minutes after he arrived, Sears approached the service area of the bar, just outside the kitchen. The only people in the area besides Sears were Restaurant employees. After he refused to leave the area, an altercation ensued between Sears and Restaurant employees, during which Sears briefly entered the kitchen, where three employees were working. Shortly thereafter, an off-duty Metropolitan police officer who had been dining in the Restaurant came to the service area, where he found Sears on his hands and knees near the entrance to the kitchen. As the police officer walked him to the door of the Restaurant, Sears briefly struggled and then appeared to lose consciousness. Later that night, Sears was treated at a local hospital for a skull fracture and an epidural hematoma (a blood clot between the skull and brain membrane), which was surgically removed. As a result of his injuries, Sears suffered permanent brain damage and does not remember the incident at the Restaurant.
 
 
 5
 Sears brought this diversity action in District Court against CHMC, the owner of the Restaurant, seeking damages for the injuries he allegedly sustained as a result of the excessive force used by Restaurant employees in handling him. Specifically, Sears alleged that a Restaurant kitchen employee caused his injury by striking him on the head with a blunt instrument--probably a kitchen utensil--during the brief period he was in the kitchen on the night of the incident. CHMC impleaded the District of Columbia and its off-duty officer as third-party defendants, claiming that the actions of the off-duty officer had caused or contributed to Sears' injury. At trial, expert medical testimony established that Sears' skull fracture and blood clot were caused by a blow to the head with a blunt object, although no testimony established the exact nature of the object. The medical testimony indicated that a blood clot such as Sears' would typically produce semiconsciousness or unconsciousness not immediately, but some time, or "a while," after the blow that caused the blood clot. Trial Tr. II at 54, 94, reprinted in J.A. 179-80, 220. Expert testimony also established that Sears' blood alcohol level did not cause his unconsciousness upon being removed from the Restaurant. All of the Restaurant employees who testified denied striking or seeing any other employee strike Sears with a blunt instrument. None of the employees explained how Sears ended up on his hands and knees near the kitchen. Finally, there was no testimony as to what Sears did in the approximately twenty minutes he was in the Restaurant prior to the altercation. At the conclusion of Sears' case-in-chief, the District Court granted appellees' motion for judgment as a matter of law on the ground that Sears had presented insufficient evidence upon which the jury could reasonably find that a Restaurant employee caused Sears' injury.
 
 
 6
 We review de novo the District Court's entry of judgment as a matter of law. See Hayman v. National Academy of Sciences, 23 F.3d 535, 537 (D.C.Cir.1994). We must evaluate whether appellant proffered "sufficient evidence upon which a jury could properly base a verdict" in his favor. Boodoo v. Cary, 21 F.3d 1157, 1161 (D.C.Cir.1994) (internal quotations and emphasis omitted). The court must review the evidence in the light most favorable to appellant, resolving any conflicts in his favor. See Mackey v. United States, 8 F.3d 826, 829 (D.C.Cir.1993). Because this court may not substitute its judgment for that of the jury, we may neither assess the credibility of testimony nor weigh the evidence. See id. In short, a judgment as a matter of law is not warranted "unless the evidence, together with all the inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." Boodoo, 21 F.3d at 1161 (internal quotations omitted); accord Mackey, 8 F.3d at 829; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) ("The Judge's inquiry ... unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.").
 
 
 7
 Sears contends that his evidence was sufficient to go to the jury. Specifically, he notes that the medical evidence established that his head wound resulted from a blow from a blunt instrument. He also notes that direct evidence placed him in the Restaurant kitchen for a few minutes during the altercation; the only people in the kitchen were Restaurant employees; and the kitchen was laden with blunt instruments, namely kitchen utensils. Thus, Sears claims that the kitchen employees had both the opportunity--accessible kitchen utensils and no non-employee witnesses--and the motive--the altercation--to strike him on the head with a blunt instrument. His case is further buttressed, Sears argues, by the fact that he was seen on his hands and knees near the kitchen door shortly after he was in the kitchen and that medical testimony established that it was consistent with a head injury such as his for a person to lose consciousness some time after the blow causing the injury. Based on the foregoing evidence, Sears contends that a reasonable jury could conclude that, more likely than not, one of the kitchen employees delivered the blow that caused his injuries.
 
 
 8
 We disagree. We find that this is a close case, particularly because of the absence of any explanation by Restaurant employees of how Sears ended up on his hands and knees near the entrance to the kitchen. Nevertheless, the critical failure of Sears' medical evidence to reasonably approximate when his injury must have been inflicted requires affirmance in this case. In particular, the medical evidence merely indicated that someone with an epidural hematoma would typically lose consciousness "a while" after absorbing the blow that caused the injury. This imprecision allowed for too many equally likely possibilities for what caused Sears' injury and thus invited impermissible jury speculation. For instance, it is equally likely that Sears was injured prior to arriving at the Restaurant, or in the approximately twenty minutes he was in the Restaurant before the altercation near the kitchen. As a result, Sears failed to present sufficient evidence upon which the jury could make a reasonable choice between his theory of the case and any number of other equally plausible explanations for his injuries. See Elliott v. Michael James, Inc., 507 F.2d 1179, 1184 (D.C.Cir.1974) (stating that while plaintiff need not disprove all other possible causes for injury, plaintiff must present evidence upon which reasonable jury could conclude that plaintiff's theory more likely than not what actually occurred). Had the medical evidence indicated that someone with an epidural hematoma loses consciousness within a couple minutes of receiving the injury, the result in this case would likely be different. Absent any such evidence reasonably approximating when Sears' injury occurred, however, we must affirm the District Court's grant of judgment as a matter of law in favor of appellees.