### George M. KEITH, Plaintiff,

v.

### Joseph DUFFEY, Director, United States Information Agency, Defendant.

### No. CIV. A. 98–1452(PLF).

United States District Court, District of Columbia.

Sept. 30, 1999.

---

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on defendant's motion to dismiss or for summary judgment. Plaintiff alleges that defendant discriminated against him on the basis of his race when it refused to promote him to a GS–9 position in 1989 and subsequently discriminated and retaliated against him when it changed the title and duties of his position in 1994. Defendant has moved to dismiss all of plaintiff's claims on the grounds that (1) he did not file his 1989 promotion claim at the administrative level in a timely manner, (2) he has not made out a *prima facie* case for any of this claims, and (3) he has not demonstrated that defendant's asserted legitimate, nondiscriminatory and nonretaliatory justifications for the personnel actions were pretextual. The Court will dismiss plaintiff's 1989 promotion claim as untimely and will dismiss plaintiff's other discrimination claim for failure to establish a *prima facie* case. Plaintiff's retaliation claim, however, survives.

## I. BACKGROUND

Plaintiff George M. Keith is an African American man who has been employed by the United States Information Agency ("USIA") since 1964. Beginning in July of 1986, he worked as a GS–8 Radio Production Assistant for the USIA's Voice of America program. Soon after beginning the job, plaintiff filed a request with the Office of Personnel Management ("OPM") that his position be reclassified as a higher grade. After conducting an evaluation of plaintiff's position, however, OPM concluded that plaintiff's position should be reclassified at a GS–5 level. Plaintiff was put in a "save pay" situation—apparently, he was paid at a GS–8 level even though his job was classified as a GS–5 position—until 1989, when he was transferred to the position of Supervisory News Assistant.

Plaintiff's new position also was compensated at a GS–8 level. In his letter accepting the position, however, plaintiff noted his objection to the pay level and expressed his concern that he was not being compensated at a higher level because of his race. *See* Gov't Motion, Exh. 9 at 3. Over the next few years, plaintiff attempted to have his new position reclassified at a GS–9 level. The USIA requested that its personnel office evaluate plaintiff's request. Once again, the review concluded that a pay level increase was not warranted.

In 1994, plaintiff's position title was changed again to "News Traffic Manager" or "Bubble Operator." This position was still compensated at a GS–8 level but no longer included any supervisory duties. As a result of the change, plaintiff filed a formal administrative complaint alleging that he was denied a promotion in 1989 because of racial discrimination and that his position was changed in 1994 because of racial discrimination and retaliation. The EEOC rejected plaintiff's claims, last affirming its decision on March 12, 1998. Plaintiff brought this lawsuit on June 10, 1998.

## II. DISCUSSION

### A. *Plaintiff's 1989 Claim*

Defendant first argues that plaintiff did not bring his administrative claim concerning his 1989 assignment to the position of Supervisory News Assistant in a timely manner. The parties agree that, under the then-relevant regulations, plaintiff was required to contact an EEO counselor within thirty days of an allegedly discriminatory act. *See* 29 C.F.R.

§ 1613.214(a)(1)(i) (1989). The parties also agree that plaintiff did not bring his 1989 claims during this time period. The Court therefore should dismiss plaintiff's 1989 claims as untimely unless some equitable reason exists to excuse his late-filed administrative complaint.

 Plaintiff contends that the Court should excuse his untimely filing because defendant's conduct in 1989 is part of a "continuing violation." In order to find a "continuing violation," plaintiff must show a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Hunt v. D.C. Dep't of Corrections*, 41 F.Supp.2d 31, 35 (D.D.C.1999) (quoting *Milton v. Weinberger*, 645 F.2d 1070, 1074–75 (D.C.Cir.1981)). The Court must ask (1) "whether an actual violation of Title VII occurred during the statutory period," and (2) "whether this discriminatory act either was part of a series of related discriminatory acts or was caused by a discriminatory system in effect both before and during the limitations period." *Palmer v. Kelly*, 17 F.3d 1490, 1496 (D.C.Cir.1994).

 Plaintiff contends that defendant's actions in 1989 were part of a series of discriminatory acts that culminated in the change of his position and duties in 1994. Specifically, he argues that he accepted the 1989 position with the understanding that he would receive training for a supervisory position, was denied the training and supervisory duties over the next five years, and finally was officially stripped of any supervisory duties in 1994.

The Court cannot agree. Plaintiff has provided no evidence to support a conclusion that any common nexus existed between the 1989 and 1994 actions. The two actions occurred as a result of separate evaluations of defendant's positions by different organizations, related to different aspects of plaintiff's employment (salary versus duties), are not alleged to have been made by the same person and are not linked in any other way that the Court can discern. Defendant's 1989 action therefore is a distinct occurrence from its 1994 action and is not part of a "a series of related discriminatory acts." *Palmer v. Kelly*, 17 F.3d at 1496; *see also Cones v. Shalala*, 945 F.Supp. 342, 346 (D.D.C.1996) ("[A] plaintiff must show the events are interrelated and form a common nexus or theme"). Finally, even if the facts of this case could support a finding of a "continuing violation," the Court would hesitate to extend such equitable relief to plaintiff when he demonstrated knowledge of the existence of a potential claim in his 1989 letter accepting the position of Supervisory News Assistant but failed to act at that time. *See* Gov't Motion, Exh. 9 at 3 ("expressed concern, as a black person, with . . . the assignment of this supervisory position as a GS–8 rather than a GS–9 or above"). The Court therefore will dismiss plaintiff's claim regarding his assignment to the position of Supervisory News Assistant in 1989.

### B. Plaintiff's 1994 Claims

Defendant contends that the Court should dismiss plaintiff's claims regarding the change in his position title and duties in 1994 because he has not made out a *prima facie* case and has not rebutted defendant's asserted legitimate, nondiscriminatory and nonretaliatory justification for its actions. In order to prevail in a case initiated under Title VII, the plaintiff initially must establish a *prima facie* case of prohibited discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff succeeds in making out a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action. *Id.* Once the defendant articulates a sufficient reason, the presumption raised by the *prima facie* case is rebutted, and the burden shifts back to the plaintiff to produce some evidence, either direct or

circumstantial, to show that the defendant's proffered reason for its actions is a mere pretext for discrimination or retaliation. *Id.* at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Summary judgment "is appropriate where either the evidence is insufficient to establish a *prima facie* case, ... or, assuming a *prima facie* case, there is no genuine issue of material fact that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Paul v. Federal Nat'l Mortgage Ass'n,* 697 F.Supp. 547, 553 (D.D.C.1988); *see Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998). In evaluating the evidence on summary judgment, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case ...." *Aka v. Washington Hosp. Ctr.,* 156 F.3d at 1291.

### 1. The *Prima Facie* Case

■ Plaintiff claims that the change in his position title and duties in 1994 occurred as a result of both discrimination on the basis of his race and retaliation for his prior protected activity. To establish a *prima facie* case of discrimination, plaintiff must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) other similarly situated employees from outside the protected class were not subject to that action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* claim of retaliation, plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) he was subjected to an adverse action by his employer; and (3) there existed a causal link between the adverse action and the protected activity. *See Thomas v. National Football League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir.1997). Defendant argues that plaintiff has failed to allege a *prima facie* case of either discrimination or retaliation because he was not subjected to an adverse employment action. Defendant also maintains that plaintiff's discrimination claim fails because plaintiff has not demonstrated that any similarly situated employee from outside his protected class was not subject to the change in position title and duties.

■ According to defendant, an action must affect an employee's salary or work hours in order to be adverse. *See Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C.Cir.1997). Our court of appeals has not directly addressed the definition of an "adverse action." Where it has spoken, however, it has adopted a broad interpretation of the term that encompasses more than actions affecting an employee's salary and work hours. In *Passer v. American Chemical Soc'y,* 935 F.2d 322, 331 (D.C.Cir.1991), for example, the D.C. Circuit announced that "[Title VII] does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." Moreover, this Court has held in the past that "a less than Outstanding performance rating," in the context of a series of other alleged retaliatory conduct by an employer, constitutes an "adverse action" under Title VII. *See Hayes v. Shalala,* 902 F.Supp. 259, 266–67 (D.D.C.1995). It would be inconsistent to hold that Title VII did not provide protection against allegedly negative changes in plaintiff's position title and duties when it protects against less concrete actions such as a low performance rating. *But see Jones v. Billington,* 12 F.Supp.2d 1, 14 (D.D.C.1997) ("Satisfactory" evaluations "do not rise to the level of adverse actions"). Plaintiff therefore has sufficiently alleged an adverse action.

■ The Court concludes, however, that plaintiff has failed to assert a *prima facie* claim of discrimination because he has not shown that any similarly situated employee from outside his protected class was treated differently. In fact, plaintiff does not dispute that a white employee holding the identical position as plaintiff in 1994

was subject to the same changes in his position title and duties. Instead, plaintiff argues that some of his predecessors in his position were white and were compensated at a higher pay level.[1] Plaintiff's pay scale, however, is not relevant to the adverse action alleged with regard to the 1994 claim. The adverse action alleged as a basis for his 1994 claims is the change in plaintiff's position title and duties. The only white person identified by either party that was subject to that employment action was treated identically. *See* Gov't Motion at Exh. 8. The Court therefore will dismiss plaintiff's 1994 discrimination claim but not his 1994 retaliation claim.

### 2. Defendant's Legitimate, Nonretaliatory Justification

■ Defendant's final argument against plaintiff's retaliation claim is that plaintiff has not rebutted the legitimate, nonretaliatory justification articulated for changing his position title and duties. Defendant contends that plaintiff's position title and duties were changed to better reflect his duties because he never actually supervised employees. In response, plaintiff contends that his predecessors supervised employees and that he was more qualified than his predecessors because he possessed a college education while they did not. *See* Affidavit of George M. Keith ¶ 7. Plaintiff specifically states that his predecessors supervised at least one employee— the plaintiff himself. *See id.* ¶ 3. Defendant has not contested these statements.

Plaintiff's statements point out a logical flaw in defendant's asserted justification, on the basis of which a jury might conclude that the justification is pretextual. Defendant's argument that it changed the position because plaintiff did not have supervisory duties neglects to explain as an initial matter why he did not have supervisory duties in the first place. Defendant

cannot create the need to downgrade plaintiff's position by simply depriving him of the duties that his predecessors appear to have had and then state that his new position more accurately reflects his duties. Such a logical flaw would be adequate evidence from which a jury could conclude "in light of the total circumstances of the case" that the defendant's justification was pretextual. *Aka v. Washington Hosp. Ctr.*, 156 F.3d at 1291. The Court therefore will not grant summary judgment in favor of defendant on plaintiff's retaliation claim.

An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

Upon consideration of defendant's motion to dismiss or, alternatively, for summary judgment, plaintiff's opposition and defendant's reply, and for the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that plaintiff's discrimination claim regarding his assignment to the position of Supervisory News Assistant in 1989 are DISMISSED; it is

FURTHER ORDERED that plaintiff's discrimination claim regarding the change in his position title and duties in 1994 are DISMISSED; it is

FURTHER ORDERED that plaintiff's retaliation claim regarding the change in his position title and duties in 1994 shall be scheduled for trial; and it is

FURTHER ORDERED that a status conference is scheduled for November 9,

---

1. Plaintiff admits that his immediate predecessor was African American and therefore part of the same protected class.

1999 at 9 a.m. to set pretrial and trial dates.

SO ORDERED.