**Arthur L. LLOYD, Plaintiff,**

v.

**John ASHCROFT, Defendant.**

No. Civ.A. 97–1287(PLF).

United States District Court, District of Columbia.

June 27, 2002.

---

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

Before the Court are defendant's motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur of the verdict, plaintiff's opposition and defendant's reply. Upon consideration of the arguments of the parties and the entire record herein, the Court grants defendant's motion for judgment as a matter of law in part and denies it in part. The Court denies defendant's motion for a new trial and his motion for remittitur.

## I. BACKGROUND

On October 26, 2001, after an eight-day trial on plaintiff Arthur Lloyd's claims of discrimination and retaliation, the jury returned a verdict in Mr. Lloyd's favor on all six claims, answering affirmatively to each of the following six questions:

1. Has plaintiff proved by a preponderance of the evidence that his failure to receive a promotion to a GS–12 Senior Deputy U.S. Marshal position in September 1992 was, more likely than not, motivated by plaintiff's having engaged in protected activity?

2. Has plaintiff proved by a preponderance of the evidence that his failure to be assigned to the Warrant Squad between 1990 and 1994 was, more likely than not, motivated by plaintiff's race?

3. Has plaintiff proved by a preponderance of the evidence that his failure to be assigned to the Warrant Squad between 1990 and 1994 was, more likely than not, motivated by plaintiff's having engaged in protected activity?

4. Has plaintiff proved by a preponderance of the evidence that he was required to go through additional procedures regarding his leave and that such requirement was, more likely than not,

Veronice Annette Holt, Washington, DC, Everald Fitzgerald Thompson, Washington, DC, for plaintiff.

Michael Anthony Humphrey, Edith M. Shine, U.S. Attorney's Office, Washington, DC, Joe Lazar, U.S. Marshal's Service, Arlington, VA, for defendant.

motivated by plaintiff's having engaged in protected activity?

5. Has plaintiff proved by a preponderance of the evidence that he was denied overtime on February 11, 1994 and that such denial was, more likely than not, motivated by plaintiff's having engaged in protected activity?

6. Has plaintiff proved by a preponderance of the evidence that he was denied various assignments before 1994 and that such denials were, more likely than not, motivated by plaintiff's having engaged in protected activity?

*See* Jury Verdict Form at 1–2. On the verdict form in response to a seventh question, the jury awarded Mr. Lloyd a total of $36,000 in compensatory damages. *See id.* at 3.

## II. DISCUSSION

### A. *Motion for Judgment as a Matter of Law*

Entry of judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure is warranted only if " 'the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not' have reached a verdict in plaintiff's favor." *McGill v. Munoz*, 203 F.3d 843, 845 (D.C.Cir.2000) (quoting *Duncan v. Washington Metro. Area Transit Auth.*, 201 F.3d 482, 485 (D.C.Cir.2000)). "In making that determination, a court may not assess the credibility of witnesses or weigh the evidence," *Hayman v. National Academy of Sciences*, 23 F.3d 535, 537 (D.C.Cir. 1994), nor may it "substitute its judgment for that of the jury." *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C.Cir.1994); *see* 9A

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (2d ed.1995) (on a motion for judgment as a matter of law, a court "must view the evidence most favorably to the party against whom the motion is made"). "Because a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored." *Boodoo v. Cary*, 21 F.3d at 1161. Viewing the evidence presented at trial in a light favorable to plaintiff and drawing all reasonable inferences in his favor, the Court concludes that a reasonable jury could find in plaintiff's favor with respect to Claims 1, 3, 4 and 6. The Court therefore denies defendant's motion on these claims, but grants the motion with respect to Claims 2 and 5 for the reasons discussed below.[1]

### 1. *Plaintiff's Second Claim*

█ With respect to Mr. Lloyd's second claim—his sole claim of discrimination—that he was not assigned to the Warrant Squad between 1990 and 1994 because of his race, the Court grants defendant's motion for judgment as a matter of law. Mr. Lloyd contends that during the relevant period of this lawsuit, he was assigned to Court Support, Prisoner Coordination and Special Services but was not assigned to the Warrant Squad despite his request to then United States Marshal Herbert Rutherford. Plaintiff claims that by refusing to assign him to the Warrant Squad Marshal Rutherford engaged in unlawful discrimination based on Mr. Lloyd's race. To establish a *prima facie* case of discrimination, plaintiff must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) other similarly situated employees

---

1. The issue, of course, is not whether this Court would have found for the plaintiff if it were sitting as the trier of fact, assessing credibility, drawing inferences and assuring itself that plaintiff had proved his case by a preponderance of the evidence. The issue is only whether there was *"sufficient evidence upon which a jury could properly base a verdict"* for plaintiff. *Boodoo v. Cary*, 21 F.3d at 1161 (quoting *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 828 (D.C.Cir. 1988)) (emphasis in original).

from outside the protected class were not subject to that action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). During trial, plaintiff never identified a similarly situated non-African American deputy marshal who was assigned to the Warrant Squad during the time period in question. He therefore cannot prevail on his discrimination claim.

At trial, the Court admitted in evidence an assignment memorandum offered by plaintiff dated September 22, 1992, demonstrating (in the words of plaintiff's counsel) that on that date "all white marshals assigned were either going to or coming from rotational assignments in Warrant Squad or Special Services and all African American employees were going from Court Support to Prisoner Coordination." *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Remittitur of the Verdict at 13. As the evidence at trial demonstrated, however, the white deputies named in this memorandum were not similarly situated to plaintiff because they were new deputies who recently entered the Marshal's Service. As the uncontradicted testimony at trial showed, Marshal Rutherford therefore was *required* to rotate them through all assignments within their first three years under the Three Year Deputy Development Plan. By contrast, plaintiff was not a new deputy because he had been in the Marshal's Service for several years in the Superior Court of the District of Columbia before being transferred to the United States District Court for the District of Columbia in 1990. His assignments therefore were controlled by the discretion of Marshal Rutherford, not by the Three Year Deputy Development Plan for new deputies. The white deputies assigned to the Warrant Squad and named in the memorandum—who were required to be

assigned to the Warrant Squad during their first three years—therefore cannot be considered similarly situated.

Plaintiff argues that Earl Day, a white deputy marshal who testified at trial, was a similarly situated deputy who received preferential rotational assignments. Although the Three Year Deputy Development Plan did not apply to either plaintiff or to Mr. Day because neither of them was considered to be a new deputy, Mr. Day was not similarly situated to plaintiff either because Mr. Day never was assigned to the Warrant Squad during the timeframe of this lawsuit. *See Keith v. Duffey,* 77 F.Supp.2d 46, 50–51 (D.D.C.1999). Plaintiff's claim is that he was discriminated against on the basis of his race by not being assigned to the Warrant Squad between 1990 and 1994. Neither was Mr. Day, whose uncontroverted testimony at trial was that from 1990 to 1994 he worked in Court Support and Special Services, not in the Warrant Squad. Deputy Day therefore was not similarly situated.

Plaintiff now attempts to recast his discrimination claim, arguing that, unlike Mr. Day, he was required to spend a year in Court Support before being eligible for an assignment to the Warrant Squad, and he maintains that this constitutes discrimination based on race. The adverse action alleged in his amended complaint and tried before the jury as his claim of discrimination, however, is not that plaintiff had to spend a year in Court Support but that Marshal Rutherford did not assign him to the Warrant Squad between 1990 and 1994. A plaintiff cannot change the theory of his case in his post-trial motion in order to survive a Rule 50 motion for judgment as a matter of law. He is bound by what he pled and attempted to prove at trial. *Cf. Kattan v. District of Columbia,* 995 F.2d 274, 276 (D.C.Cir.1993) (court should not grant motion for a new trial "in order

to consider a new defensive theory which could have been raised during the original proceedings") (quoting *Grumman Aircraft Engineering Corp. v. Renegotiation Bd.*, 482 F.2d 710, 711 (D.C.Cir.1973), *overruled on different grounds*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2805 (2d ed.1995). Plaintiff failed to prove that any similarly situated non-African American deputy marshal was treated differently by being assigned to the Warrant Squad during the relevant period. The Court therefore grants judgement for defendant on this claim.[2]

### 2. *Plaintiff's Fifth Claim*

█ The Court also grants judgment for defendant on plaintiff's fifth claim—that he was denied overtime on February 11, 1994, and that such denial was, more likely than not, retaliation motivated by plaintiff's having engaged in protected activity. The only evidence related to this claim consists of plaintiff's trial testimony and the testimony of his supervisor at the time, Deputy Marshal Thomas Carruthers. Upon review of that testimony, the Court concludes that there is no evidentiary basis for the jury's finding that the denial of Mr. Lloyd's overtime was the result of retaliation. In fact, it appears that Mr. Lloyd was not denied any overtime at all and that Carruthers' unrebutted testimony provided a perfectly legitimate and non-retaliatory explanation for what happened on February 11.

The evidence showed that on February 11, 1994, Mr. Lloyd and Deputy Marshal George Walsh, a white deputy, were scheduled to retrieve a prisoner from Peters-

burg, Virginia for a court appearance at 10:00 a.m. On February 11, however, there was a blizzard, and the District Court was closed because of the weather; because the courthouse was closed, the prisoner's presence was not required so the scheduled trip was unnecessary and was cancelled. Mr. Lloyd then was permitted to go home, was paid a full day for administrative leave because of the weather and received three hours of overtime for the time he spent at the courthouse. Deputy Walsh remained at the courthouse. Later that same day, he and another white deputy, Steven McGovern, performed a different prisoner transportation assignment from the Alexandria City Jail to the Prince William County Jail after they learned that certain roads were passable. Unlike the prisoner transport that Mr. Lloyd was scheduled to perform, this assignment did not depend on the courthouse being open for business. Because Deputy Walsh and Deputy McGovern carried out this assignment, they received more overtime than did Mr. Lloyd, who claims that this was unlawful retaliation.

Plaintiff failed to develop any factual basis at trial—either through his own testimony or the testimony of Mr. Carruthers—for a claim of retaliation, much less that he was "denied" any overtime at all. Mr. Lloyd received overtime for the hours that he actually worked and then decided to go home when his assignment was cancelled because of the weather. After he left, a different assignment that did not depend on the courthouse being open was performed by two deputies who were still at the courthouse. No one told Mr. Lloyd that he could not take this assignment—

---

**2.** Plaintiff also points to evidence which he contends demonstrates the historical discrimination in the Marshal's Service and to the Gerald Elston letter which he contends supports his view that there was a special policy to keep him in Court Support and out of the Warrant Squad for at least a year. Even taken in the light most favorable to plaintiff, this evidence has no relevance to the specific question of whether Mr. Lloyd has identified a similarly situated non-African American deputy marshal.

Mr. Lloyd decided to leave work before the assignment became available. It was plaintiff's decision to go home, and he has failed to provide any evidence that shows that the events of that day were the result of retaliation because of his past protected activity.

### B. Motion for New Trial

In the alternative, defendant argues that the Court should grant a new trial under Rule 59 of the Federal Rules of Civil Procedure because the jury verdict on defendant's liability runs contrary to the clear weight of the evidence and because the amount of the jury's verdict, awarding $36,000 in compensatory damages, is excessive in relation to the evidence presented.

■ The standard for a new trial under Rule 59 is "less onerous" than the standard applied under Rule 50 for judgment as a matter of law. A court may grant a motion for a new trial if the verdict is contrary to the clear weight of the evidence, *see* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2806 (2d ed.1995), or if the damages awarded by the jury are excessive. *See id.* § 2807; *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2539 (2d ed.1995). A new trial should be granted "only where the court is convinced the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Nyman v. FDIC*, 967 F.Supp. 1562, 1569 (D.D.C.1997) (quoting *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176 (D.D.C. 1986)).

Although the standard for a new trial is less onerous than is the standard for a motion for judgment as a matter of law, the Court denies defendant's motion for a new trial with respect to Claims 1, 3, 4 and 6. The jury's verdict in plaintiff's favor on

these claims does not run contrary to the clear weight of the evidence and does not represent a seriously erroneous result or miscarriage of justice. With respect to the second and fifth claims, however, the jury verdicts do run counter to the clear weight of the evidence and were seriously erroneous. As the Court already has explained, the clear weight of the evidence demonstrated that the white deputies listed in the September 22, 1992 assignment memorandum and Earl Day were not similarly situated to Mr. Lloyd. *See supra* at 11–12. Similarly, the clear weight of the evidence at trial showed that plaintiff was not denied overtime on February 11, 1994, and in fact was paid overtime for the hours he worked. *See supra* at 12–13. Had the Court not already concluded that judgment for defendant as a matter of law is appropriate on the second and fifth claims, it would grant defendant's motion for a new trial.

■ Defendant also moves for a new trial on the ground that the damages awarded by the jury were excessive. "In assessing whether an award is excessive, the Court should determine if the size of the verdict is beyond reason, if it 'shocks the conscience' of the court, or if it represents a 'miscarriage of justice.'" *Curry v. District of Columbia*, 9 F.Supp.2d 1, 4 (D.D.C.1998) (quoting *Machesney v. Bruni*, 905 F.Supp. 1122, 1131 (D.D.C.1995)), *aff'd in part, rev'd in part*, 195 F.3d 654 (D.C.Cir.1999). "[B]ecause the Seventh Amendment right to a jury trial pervades the realm of jury verdict decisions," a motion for a new trial on the basis of an excessive damages should be granted only if the award exceeds the "highest amount the jury tolerably could have awarded." *Langevine v. District of Columbia*, 106 F.3d 1018, 1024 (D.C.Cir.1997) (quoting *Carter v. District of Columbia*, 795 F.2d 116, 135 n. 13 (D.C.Cir.1986)).

Defendant contends that plaintiff's testimony regarding damages was too vague and insufficient to justify an award of $36,000. It is the Court's recollection, however, that plaintiff presented sufficient evidence regarding his pain, suffering or other emotional injuries stemming from the claims asserted to justify an award of damages. Moreover, the amount of damages actually awarded by the jury, $36,000, does not shock the conscience of the Court or represent a miscarriage of justice. Even after granting judgment for defendant on two of the six claims as a matter of law, the Court does not believe that a total award of $36,000 on the remaining four claims is excessive. The Court therefore denies defendant's motion for a new trial on this ground. As the Court has denied defendant's motion for a new trial because the jury verdict was not excessive, the motion for remittitur is denied as moot.

A separate Order consistent with this Memorandum Opinion will issue this same day.

SO ORDERED.

### ORDER

Upon consideration of defendant's renewed motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur of the verdict, plaintiff's opposition and defendant's reply and the entire record herein, and for the reasons stated in the Memorandum Opinion issued by the Court this same day, it is hereby

ORDERED that defendant's renewed motion for judgment as a matter of law is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant's motion for a new trial is DENIED; it is

FURTHER ORDERED that defendant's motion for remittitur is DENIED as moot; and it is

FURTHER ORDERED that JUDGMENT is entered for defendant on plaintiff's second and fifth claims. The jury verdict for plaintiff on the first, third, fourth and sixth claims and its award of $36,000 in compensatory damages shall stand.

SO ORDERED.