Cynthia D. CURRY Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

No. CIV. A. 97–1088(SS).

United States District Court,
District of Columbia.

June 3, 1998.

Elizabeth Margaret Boyle, Ted Justice Williams, Washington, DC, for Plaintiff.

Steven John Anderson, Office of Corporation Counsel, D.C., Washington, DC, for Defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on (1) Defendant's motion for judgment as a matter of law, or, in the alternative, for a new trial or remittitur; and (2) Plaintiff's motion for attorneys fees and costs.

When considering Defendant's motion for judgment as a matter of law or new trial, the Court must examine the facts in the light most favorable to Plaintiff. *See Morgan v. District of Columbia*, 824 F.2d 1049, 1056 (D.C.Cir.1987). In this case, the facts that the jury could have found are as follows:

Plaintiff Cynthia Curry was employed by the Metropolitan Police Department ("MPD") in the Security Squad, Intelligence Unit. Detective Freeman, also an employee of the MPD, was a 26–year veteran of the Domestic Security Squad in the Intelligence Unit. In October, 1992, Plaintiff first met Detective Freeman when she began to work in the Intelligence Unit of the MPD. Between October 1992 and April 1993, Plaintiff and Detective Freeman engaged in a six month romantic relationship that included dating and consensual sexual intercourse. After their relationship ended around April, 1993, Detective Freeman began to harass Plaintiff by telling her sexual jokes, and suggesting that Plaintiff allow him to "slip her the lizard" while grabbing his crotch. (Detective Freeman had referred to his penis as his "lizard").

In September 1994, Plaintiff told Detective Freeman's supervisor, Sergeant Majors, that Detective Freeman had been sexually harassing her. Sergeant Majors referred Plaintiff to the MPD Labor Relations Office. On September 30, 1994, Plaintiff filed a complaint at the MPD's EEO office and an investigation of Plaintiff's complaints was undertaken.

Sergeant Majors asked Detective Freeman about Plaintiff's allegations, and Detective Freeman denied them. Consistent with MPD policy, Sergeant Majors advised Detective Freeman that sexual harassment would not be tolerated. After Sergeant Majors spoke to Detective Freeman, there was no more verbal contact between Plaintiff and Detective Freeman. However, Plaintiff stated that Detective Freeman would glare at her in a harassing manner, making her feel extremely uncomfortable. During this time, Lieutenant Peacock of the MPD Labor Relations Office conducted an investigation into Plaintiff's complaint and concluded that there was "probable cause" that would justify further processing of Plaintiff's complaint. Additionally, the D.C. Human Rights Office conducted an investigation and also found "probable cause" that Detective Freeman sexually harassed Plaintiff. However, under the MPD labor contract, discipline cannot be taken against an officer more than 45 days after the department becomes aware of improper conduct. Because Lieutenant Peacock's investigation took more than 45 days to complete, no disciplinary action was taken against Detective Freeman. He was left in the Intelligence Unit working in close proximity to the Plaintiff. In June 1996, Plaintiff left the Intelligence Unit.

On May 16, 1997, Plaintiff filed this action in District Court. The case went to trial, and the jury returned a verdict in favor of the Plaintiff for $100,000.

## I. Judgment as a Matter of Law

■ Defendant claims that the jury's verdict should be set aside because the District of Columbia cannot be held liable for Detec-

tive Freeman's conduct before it had notice. Defendant claims that it did not have notice because Plaintiff failed to report Detective Freeman's remarks to her supervisor or the MPD Labor Relations Office before August 1994. Defendant claims that after it had notice, it acted appropriately and advised Detective Freeman to stop the harassing conduct. After Detective Freeman was advised, he stopped making harassing jokes and remarks, but began to give Plaintiff long glares. Defendant claims that Freeman's glares did not rise to a level which affected Plaintiff's terms or conditions of employment.

██ In order to overturn a jury's verdict, the court must find that "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984). The verdict in this case was the result of careful consideration by an eight member jury that paid close attention to the testimony during trial. There was sufficient evidence introduced at trial that would support a finding of continued harassment after the time Defendant claims it had notice. For example, at trial, Plaintiff demonstrated the way that Detective Freeman would glare at her. According to her demonstration, Detective Freeman would walk by her, and slowly and deliberately look at her up and down. A reasonable jury could conclude that these glares, combined with the prior history of Detective Freeman's actions toward Plaintiff, could constitute continuing harassment.

Additionally, the jury could have concluded that the Defendant's corrective action was inadequate. The Defendant took no steps to separate the parties except to afford the Plaintiff the opportunity to leave the Intelligence Unit. In cases such as this, a jury could find that the Defendant should have required Detective Freeman, the harassing party, to move.

The Defendant argued that the 45–day limitation under the MPD labor contract prevented it from taking any additional action against Detective Freeman. The contract, however, was not binding upon the jury, for it was overridden by federal civil rights law.

Here, the jury could have found a 45–day limitation was not an adequate excuse for the Defendant's failure to take further corrective action on Plaintiff's complaints.

## II. Admissibility of the EEO and D.C. Human Rights Reports

[3] Defendant also claims that the jury's verdict should be set aside because the Court erred in admitting the EEO and D.C. Human Rights Reports into evidence. The Court found that the admission of these reports was proper under Fed.R.Evid. 803(8)(c), as a public report, and under Fed.R.Evid. 801(d)(2), as an admission of the Defendant. Defendant claims that the probative value of the reports "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" under Fed.R.Evid. 403.

██ The Court admitted the reports not for the purpose of proving that Detective Freeman had harassed the Plaintiff, but for the purpose of rebutting the Defendant's claim that it took adequate corrective action after receiving notice of Plaintiff's complaints. An employer must take prompt and appropriate action "reasonably calculated to end the harassment." *Waltman v. International Paper Co.,* 875 F.2d 468 (5th Cir.1989). Here, the Defendant claimed that it had taken the proper corrective measures by investigating Plaintiff's complaints. To permit the Defendant to make this claim but preclude any evidence as to the results of those investigations tells only half of the story. The reports are highly relevant evidence to rebut Defendant's claim that it responded adequately to Plaintiff's complaints. The jury had to determine what corrective action would have been adequate in light of the nature of Plaintiff's complaints. In determining the adequacy of corrective action in light of the notice that the Defendant had, the jury had to consider evidence not merely about the existence of some form of notice to the Defendant, but also of the extent of that notice. The reports go directly to that issue, demonstrating that the Defendant had notice not only that Plaintiff was claiming sexual harassment, but also that her complaints were not groundless.

**4**

The Court found that the probative value of these reports outweighed their prejudicial effect. The Court addressed any potential prejudice by instructing the jury as follows:

> The Plaintiff has introduced evidence that the District's Office of Human Rights and the Metropolitan Police Department's Office of Labor Relations found "probable cause" to believe that Plaintiff was sexually harassed. A "probable cause" finding is not a final determination of guilt; rather, it states an opinion based on the available evidence that the charging party may be able to prove her allegations during a trial such as the one you have attended. This evidence is the opinion of the director of those offices and is not binding on you. Rather, you are the sole finders of fact in this case and must judge the case based on the evidence as you see it. You should consider the "probable cause" findings in light of all the evidence in the case and come to your own conclusions. (Court's Jury Instruction No. 15).

### III. New Trial

Defendant also moves for a new trial. A court may grant a motion for new trial pursuant to Fed.R.Civ.P. 59 if the verdict is "against the clear weight of the evidence, if the damages awarded are excessive, or substantial error occurred during the proceedings." *Machesney v. Bruni*, 905 F.Supp. 1122, 1130 (D.D.C.1995). The Court finds that the jury verdict is reasonably supported by the evidence and does not conclude that a new trial is warranted.

### IV. Remittitur

Defendant claims because Plaintiff did not prove any lost wages or medical bills in this case, the jury's award of damages in the amount of $100,000 was excessive. "In assessing whether an award is excessive, the Court should determine if the size of the verdict is beyond reason, if it 'shocks the conscience' of the court, or if it represents a 'miscarriage of justice.'" *Machesney v. Bruni*, 905 F.Supp. 1122, 1131 (D.D.C.1995). In this case, the Plaintiff introduced substantial evidence about her anxiety and depression she suffered for over two years because of Detective Freeman's conduct. Plaintiff's friends and family testified about the dramatic change in her appearance and behavior caused by the harassment. The Court finds this evidence was sufficient to support the amount of damages that the jury awarded.

### V. Attorneys Fees and Costs

With the agreement of the parties, the Plaintiff has withdrawn her motion for attorneys fees and costs pending the outcome of the Defendant's appeal. The Court will grant the Plaintiff leave to refile after the appeal is determined by the Court of Appeals.

An appropriate order accompanies this Memorandum Opinion.