PALMER FORD, INC. *v.* ROM

[No. 164, September Term, 1957.]

*Decided March 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT and HORNEY, JJ., and BOYLAN, J., Chief Judge of the Fifth Judicial Circuit, specially assigned.

*Hal C. B. Clagett,* with whom were *Jerrold V. Powers* and *Sasscer, Clagett & Powers* on the brief, for appellant.

*Alvin L. Newmyer,* with whom were *Jackson Brodsky* and *Newmyer & Bress* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

In this motor vehicle collision case, the defendant challenged the sufficiency of the evidence to establish primary negligence, moved for a directed verdict on the ground of contributory negligence, and objected to a portion of the court's charge to the jury, referring to the statute prohibiting passing within a hundred feet of an intersection, as inappropriate under the facts of the case. These are the only points pressed on appeal.

The plaintiff, Rom, who operated a dry cleaning business in Hyattsville, was driving his panel delivery truck west on Hamilton Street, intending to make a left turn into a private driveway between intersections, located about forty feet from the one ahead, Thirty-sixth Avenue, when he was struck in the left rear by a Ford belonging to Palmer Ford, Inc., and driven by its employee, Caruso. Rom testified he had been proceeding at about twenty-five miles per hour, and gradually reduced his speed as he approached the turning point to a speed of about five miles per hour. Hamilton Street at the turning point is a two-lane street, about twenty-six feet wide, where traffic moves in both directions. When he was about one hundred and twenty-five feet from the turning point, he put on the mechanical blinker signal for a left turn, and also put out his arm. He looked in the rear view mirror but saw no vehicle behind him. He heard the squealing of brakes, then felt an impact which drove his truck into the private driveway. His truck was driven about twenty-five feet after the impact, and slid around so that the right rear crashed into a stone wall. In addition to the damages to his truck, the plaintiff suffered personal injuries.

Officer Baggett, called by the plaintiff, testified that he reached the scene of the accident before the vehicles had been moved. The Ford was standing about eight feet behind the truck, and he observed its skid marks fifty-five feet in length, which straddled the center line at the point of beginning and extended into the south lane where the Ford was standing. The right front of the Ford was damaged, and there was some debris immediately in front of it, indicating that this was the point of impact.

Caruso testified he overtook the Rom truck, while he was driving about thirty miles per hour in the north or right hand lane and intending to pass it on the left. The truck was slowing down, almost stopped. He saw no signal, mechanical or otherwise. He did not sound his horn. He started to pass, the truck turned in front of him, and he put on his brakes. The impact occurred in the south or left hand lane. He testified he said to Rom, "Don't you give a turn signal when you turn?", and Rom replied, "I guess not." Rom

denied making this statement. There were no eye witnesses to the collision.

The appellant relies strongly upon the case of *Wallace v. Fowler,* 183 Md. 97, but we think it is clearly distinguishable. In that case the overtaken car, proceeding south on the Ritchie Highway, attempted to make a left turn into a cross-over from the right hand lane, instead of first pulling into the left hand lane. Both of these lanes were southbound on a dual highway. The Court referred to Code (1951), Art. 66½, sec. 188, which is similar to Code (1957), Art. 66½, sec. 223. This section provides that in the case of roadways that have been "divided into three or more clearly marked lanes for traffic", a vehicle "shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Obviously, it has no application in the instant case, where the roadway was only divided by a center line and traffic moved in both directions. The conflict of testimony as to whether a timely signal was given, as required by Code (1957), Art. 66½, sec. 228, presented an issue for the jury to resolve. If signals were made for a distance of more than one hundred feet from the turning point, the failure of the driver of the overtaking vehicle to see and regard them would be clear evidence of negligence. Also, an inference of negligence under the circumstances might be drawn from the skidmarks, the slowing down of the overtaken vehicle, and the failure to sound a horn. Cf. *Smith v. Associated Transport,* 211 Md. 134, 140, and *Coastal Tank Lines, Inc. v. Canoles,* 207 Md. 37, 43.

The fact that the driver of the overtaken vehicle did not see the vehicle behind, would not be such evidence of contributory negligence, as a matter of law, as to justify the withdrawal of the case from the jury. Cf. *Hopkins v. Pearce,* 115 F. 2d 784 (C. C. A. 4th). Perhaps he was unable to see it because it had already pulled over and was partly in the south or eastbound lane. But even if Rom had seen the Ford he might well have assumed that it would not attempt to pass in the south lane in the face of the turning signals given, so that the failure to see may not have been the proximate cause

of the collision. Moreover, as pointed out in the case last cited, Rom may well have assumed that the driver of the overtaking vehicle would not attempt to pass at a point where passing is prohibited by the motor vehicle law. Cf. *Katzel v. Clark,* 215 Md. 54, 61, and cases cited. Code (1957), Art. 66½, sec. 221, provides in part, that no vehicle in overtaking and passing to the left shall be driven to the left side of the roadway "when approaching within 100 feet of or traversing any intersection". The jury was entitled to consider this section as bearing on the question of contributory negligence, and we find no error in the reading of it to the jury under the circumstances. It was undisputed that the turning point was about forty feet from the next intersection. The fact that Thirty-sixth Avenue did not cross Hamilton Street to the south, but extended in a northerly direction, did not make it any the less an intersection, as defined in Code (1957), Art. 66½, sec. 2 (20). *Brown v. Bendix,* 187 Md. 613, 618.

*Judgment affirmed, with costs.*