RICHARD E. FREUDENBERGER ET UX. *v.*
RICHARD L. COPELAND

[No. 399, September Term, 1971.]

*Decided April 19, 1972.*

170

The cause was argued before ANDERSON, MOYLAN and GILBERT, JJ.

*David J. Preller* for appellants.

*Nat W. Hopper,* with whom were *Serio, Hopper, Blumenthal & Carmody* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The fundamental question here raised is whether primary negligence, as a matter of law, will be attributed to a motorist who turns to his left in exiting a street or roadway onto an intersecting street, alley, private road or driveway and, thereby, is struck by a vehicle approaching from the opposite direction.

The automobile collision which gave rise to the present litigation occurred on Sunday morning, November 9, 1969, at 11 a.m. It occurred on U.S. Route #1 one mile south of Laurel, Maryland. At that point, U.S. Route #1 is on a north-south axis. It is four lanes wide, two lanes running northbound and two lanes running southbound. The northbound lanes are separated from the southbound lanes by a double yellow line. Shortly prior to the time of the collision, it had been raining; the road was still

wet. The speed limit for both northbound and southbound traffic was fifty miles per hour.

The appellant-plaintiffs, Mr. and Mrs. Richard E. Freudenberger, Jr., were travelling northbound in their Volkswagen on their way to a Colt football game in Baltimore. The appellee-defendant, Richard L. Copeland, a United States Army Sergeant stationed at Fort Meade, was travelling southbound in his Pontiac. He was looking for a place to eat breakfast. Just prior to the collision, the appellee noticed, on the east side of the highway (to his left), Wayson's Furniture Store, which had a sign on it reading, "Open on Sunday." He decided to stop and ask about a place that might be serving breakfast. Travelling in the fast (inner) southbound lane, he slowed up to approximately five or six miles per hour, activated his left turn signal and, seeing nothing coming from the opposite direction, began his left-hand turn across the northbound lanes. When the front of his vehicle had reached the shoulder of the road, the rear of it still protruding into the slow northbound lane, it was struck on the right rear fender by the front of the appellants' Volkswagen.

Other than the parties, there was one witness to the collision. David Miller was driving in a southerly direction on U.S. Route #1, essentially parallel to the appellee, when he saw the events immediately preceding the collision and the collision itself.

There is no intersecting street to U.S. Route #1 at the point where the appellee pulled across the road to go onto the parking lot of Wayson's Furniture Store. However, Linden Street does intersect U.S. Route #1 some ten to forty feet (The witnesses' estimates varied.) south of the point of collision. As one would look south on U.S. Route #1 from the collision site in the direction from which the appellants were coming, one would be looking up towards the crest of a hill. That crest was estimated as being seventy-five to two hundred feet from the point of the collision. From the collision point, one could not see beyond the hillcrest.

It was the testimony of the appellee that he had already started to cross the northbound lanes and was squarely athwart the fast or inner northbound lane when he first saw the Volkswagen appear over the crest of the hill in the fast northbound lane. He tried to go forward quickly to clear both northbound lanes. He testified that just prior to the collision, he noticed the Volkswagen start to swerve in his direction (from the fast into the slow northbound lane).

The witness Miller testified that the appellee was half a car length ahead of him when he started to make his left-hand turn. Miller saw the Volkswagen come over the hill just as the appellee was turning. A State trooper testified that the unmeasured skid marks of the Volkswagen ran diagonally from the fast northbound lane into the slow northbound lane at the point of collision.

Neither Mr. nor Mrs. Freudenberger had any recollection of the collision itself. Mr. Freudenberger, because of head injuries, could not even recall whether he had been driving at the time of the collision. He testified, however, that he normally did all of the driving and that his wife drove "very, very rarely, if at all." He testified that she had "only driven the car maybe twice and that like around the block." Mrs. Freudenberger testified that her husband exclusively had been operating the Volkswagen on the day of the collision. The appellee, on the other hand, testified that "I believe it was the young lady, Mrs. Freudenberger," who was driving the Volkswagen. When the State trooper arrived on the scene, the left front door of the Volkswagen had been forced open. The right-hand or passenger door was still intact. Mr. Freudenberger was lying outside the Volkswagen on the highway and Mrs. Freudenberger was lying partially out of the opened door.

Miller estimated the speed of the appellants' Volkswagen to be between forty and forty-five miles per hour. The appellee estimated that speed to be approximately sixty miles per hour.

At the conclusion of all testimony in the case, the ap-

pellants moved for a directed verdict in their favor as to liability. Judge Ridgely P. Melvin, Jr., who tried the case with a jury in the Circuit Court for Anne Arundel County, denied the motion. The jury returned a verdict in favor of the defendant. The appellants moved for a new trial and/or a Judgment N.O.V. The motions were denied. The appellants complain of the failure of the trial judge to direct a verdict in their favor on the issue of liability.

In pressing their right to a directed verdict, the appellants urge that there was in evidence a prominent and decisive act susceptible of but one interpretation in the determination of which ordinary minds would find it impossible to differ, *Raff v. Acme Markets,* 247 Md. 591, 600; *Mazer v. Stedding,* 10 Md. App. 505, 507; and that that interpretation would be that the appellee was guilty of primary negligence and that the appellants were free of contributory negligence. In assessing that claim, we must consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the appellee. *Stoskin v. Prensky,* 256 Md. 707, 709; *Yommer v. McKenzie,* 255 Md. 220, 228; *Trusty v. Wooden,* 251 Md. 294, 297; *Finneran v. Wood,* 249 Md. 643; *Mazer v. Stedding, supra,* 507. We must assume the truth of all credible evidence tending to negate primary negligence and tending to establish contributory negligence and draw all inferences of fact fairly deducible therefrom tending so to negate and so to establish. *Fowler v. Smith,* 240 Md. 240; *Herbert v. Klisenbauer,* 12 Md. App. 135, 138.

We note preliminarily that this case does not involve the Boulevard Rule. That rule is limited in its application to the entrance of an unfavored vehicle onto a favored highway and does not apply to a turn off a boulevard, even though such a turn may be a left turn across oncoming traffic whereat the turning driver has a statutory duty to yield the right-of-way. *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 212; *Tates v. Toney,* 231 Md. 9, 12-13. See also Webb, "Bothersome Boulevards," 26 *Maryland L. Rev.* 111, 112 (1966).

The appellants predicate their argument that the appellee was guilty of primary negligence upon the theory that he breached the duty imposed upon him by what was then Section 232 of Article 66½ of the Maryland Code, which provided:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

We think that section inapplicable, since it is restricted explicitly to left-hand turns made within an "intersection." The left-hand turn in question here was not made at an intersection. A not dissimilar duty was imposed upon the appellee, however, by Section 228 (a), which provided:

"*Turning.*—No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement."

Five decisions of the Court of Appeals have discussed prominently the duty imposed upon a driver who makes a left-hand turn across the flow of oncoming traffic. Four of those decisions dealt with left-hand turns made at intersections. *Gudelsky v. Boone*, 180 Md. 265; *Meldrum v. Kellam Distributing Company*, 211 Md. 504; *Talbott v. Gegenheimer*, 245 Md. 186; *Bennett v. Bass*, 248 Md. 260. One of those decisions dealt with a left-hand turn made between intersections into a private driveway. *Shanahan v. Sullivan*, 231 Md. 580. The duties imposed upon the drivers making the left-hand turns and their liabilities for breach of duty were not dissimilar. Under both sets of circumstances, the vehicle making a left turn changed

status from a favored vehicle to an unfavored one; a vehicle proceeding straight ahead in the opposite direction continued as a favored vehicle. *Bennett v. Bass, supra,* 263. See also *Durham v. United States,* 174 F. Supp. 410 (D. Md. 1959), a case dealing, under Maryland law, with a left-hand turn made at an intersection.

In discussing statutes similar to what was Section 228 (a) of Article 66½, 7 Am.Jur.2d, *Automobiles and Highway Traffic,* § 216, "Turning-generally," p. 767, states:

> "In some jurisdictions statutes have been enacted which provide that no person may turn a vehicle from a direct course upon a highway unless such movement can be made with reasonable safety. Such a statute does not require a motorist to know that a turn can be made in safety but only that he must exercise reasonable care. Similar to such statutes are statutes in other jurisdictions which provide that every person operating a vehicle on the highway should, before turning, see that there is sufficient space for a turn to be made in safety. Such a statute places a duty upon a motorist about to change his course to see that there is sufficient space for the turn to be made in safety."

It is generally recognized that the duty imposed upon the driver making the left-hand turn is one of exercising reasonable care. He is not charged with the absolute liability of making the left-hand turn at his peril. In discussing that duty, 8 Am.Jur.2d, *Automobiles and Highway Traffic,* § 799, "Left turns," p. 356, states:

> "A motorist turning left across traffic is required to exercise reasonable care, that is, care commensurate with the situation, and to look for approaching motorists. He has the duty, imposed by statute or the rules of the road, of yielding the right of way to motorists approaching from the opposite direction. This does not

mean that a motorist intending to turn left across traffic is required to wait until everyone in sight has passed before he may do so. But the failure to look for approaching motorists before turning left across traffic, and to yield the right of way to such motorists, constitutes negligence."

Focusing in even more narrowly on the situation at bar is § 801, "Between intersections," at pp. 357-358:

"Apart from statutes, the courts generally recognize the danger frequently present in undertaking to make a left turn between intersections in order to enter a private driveway. While many courts hold that motorists making such turns must exercise extraordinary precautions, maintain due care, a high degree of care, and the like, the test is what an ordinarily prudent person would have done under the same circumstances. Reasonable care means care commensurate with the apparent danger, but this does not mean that a motorist is an insurer of the safety of others in making a left turn across traffic for the purpose of entering a private driveway.

It is not necessarily an act of negligence for a motorist to make a left turn across a yellow or other highway barrier line for the purpose of entering a private driveway, although he may, of course, be negligent in getting into the driveway after crossing the barrier line."

The South Carolina statute dealing with turns into a private roadway uses the same phrase "with reasonable safety" as did Section 228 (a), here applicable. *Green v. Boney,* 233 S. C. 49, 103 S.E.2d 732, discussed that phrase, at 103 S.E.2d 736:

"The phrase 'with reasonable safety' in Section 46-405 does not mean that a left turn into a

private driveway can only be made when it can be done free from all possibility of danger, or that the party making such turn must be certain of absolute safety before he turns."

*Wilburn v. Simons,* 302 Ky. 752, 196 S.W.2d 356, dealt with a situation, like the one at bar, where a motorist made a left-hand turn just under the crest of a hill. In holding that that act did not, *ipso facto,* render him negligent as a matter of law, the court said, at 196 S.W.2d 359:

"Our attention has also been directed to Instruction III telling the jury, in sum and substance, that Wilburn was guilty of negligence as a matter of law because he drove his car to his left side of the highway at the place of accident, such place being located just in front of the crest of a hill where a yellow barrier line had been painted and where a highway sign had been erected warning Wilburn and others to keep within the westbound lane at that location. It is good basic common sense to assume and declare that Wilburn had a full and perfect right to enter his own driveway, . . . regardless of the clear necessity of crossing to the left of a yellow barrier line in order to make that entrance. Of course, Wilburn may have driven negligently in getting into his driveway. But the question of whether he did or did not was one for the jury's decision."

See also Annotation, "Automobile crossing street at a point other than a street intersection," 57 A.L.R. 1106, and see the excellent and thorough review of cases involving left turns between intersections in *Fisher v. Reilly,* 207 Or. 7, 294 P. 2d 615.

In *Gudelsky, supra; Meldrum, supra; Shanahan, supra; Talbott, supra; Bennett, supra;* and *Durham, supra,* a motorist attempted to negotiate a left-hand turn across

the flow of oncoming traffic. In each case, that left-turning motorist became an unfavored driver obliged to yield the right-of-way to the traffic approaching from the opposite direction. In each case, an oncoming favored vehicle struck the left-turning, unfavored vehicle. In each case, the court held the left-turning, unfavored driver to have been negligent in law. (In *Gudelsky, Meldrum* and *Shanahan,* to be sure, the left-turning, unfavored drivers were held to be guilty of contributory negligence since each had been a plaintiff who had prevailed in the trial court. The appellate holding of negligence, however, would not have been dissimilar even had the roles of the parties in terms of the litigation been reversed.) In none of the cases, however, was the left-turning, unfavored driver held to be negligent in law simply because his left turn across the flow of traffic was followed by a collision. In each case, there was the prominent and decisive fact that the unfavored driver had seen or was in a position to have seen (*Shanahan*) the approaching favored driver. In each case, the unfavored, left-turning driver either misjudged the speed of the approaching favored driver or misjudged his own ability to complete the turn and be off the highway before the favored vehicle arrived at the spot of collision. In each case, therefore, there was an effective failure to yield the right-of-way to an observed or observable favored vehicle.

By contrast, there was evidence in the instant case which would have permitted findings that the appellee came to a virtual stop before beginning the left-hand turn, that he activated his left turn signal, that he looked for oncoming traffic and observed none within his range of visibility for beginning the left-hand turn, that his range of visibility for oncoming traffic extended to two hundred feet, and that he was already into the turn and into the northbound lanes before he observed the appellants cresting the hill. We think the question of whether the appellee was or was not negligent for attempting the left-hand turn when and where he did was, under all of the circumstances, a proper one for the jury to resolve.

The trial judge was, therefore, not in error in refusing to direct a verdict for the appellants on the issue of liability.[1]

In view of our holding that the appellee was not in law guilty of primary negligence, it is unnecessary for us to consider whether the appellants were or were not in law free of contributory negligence. The appellants were not entitled, in any event, to a directed verdict in their favor, the denial of which is their sole basis for this appeal.

*Judgment affirmed; costs to be paid by appellants.*

---

1. Both at the trial and in the brief submitted to this Court, the appellants used the term "liability" as a synonym for "responsibility for negligence." The trial court responded with the same loose usage. It is clear that the all-embracing term "liability" comprehends not only an act of negligence which is the proximate cause of an accident, but injury as well. See *Peroti v. Williams*, 258 Md. 663, and *Richardson v. Boato*, 207 Md. 301, for a clear delineation between "negligence" and "liability." The appellee made no point of this, however. The motion for a directed verdict was, in any event, properly denied on other grounds.