831 A.2d 6

Sue Ann ABSOLON, et al.

v.

Paul Justin DOLLAHITE, et al.

No. 7, Sept. Term, 2002.

Court of Appeals of Maryland.

Aug. 27, 2003.

**548**

Martin H. Freeman (Mark A. Freeman, Martin L. Vedder, on brief), Rockville, for petitioners.

Janet M. Truhe (Miller & Truhe, L.L.C., on brief), Westminster, Mark E. Rosasco, Annapolis, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

The issue before us in this case is whether a violation of Maryland Code (1977, 2002 Repl.Vol.), § 21–203 of the Transportation Article, establishes contributory negligence as a matter of law.[1] We shall hold that it does not.

---

1.  The statute reads as follows:

" **§ 21–203.  Pedestrian control signals.**

"(a) *In general.*—Where special pedestrian control signals showing the words 'walk', 'don't walk', or 'wait' or the symbols of 'walking person' or 'upraised hand' are in place, the signals have the indication provided in this section.

"(b) *Walk.*—A pedestrian facing a 'walk' or 'walking person' signal may cross the roadway in the direction of the signal and shall be given the right-of-way by the driver of any vehicle.  At an intersection where an exclusive all-pedestrian interval is provided, a pedestrian may cross the roadway in any direction within the intersection.

"(c) *Don't walk.*—A pedestrian may not start to cross the roadway in the direction of a 'don't walk' or 'upraised hand' signal.

"(d) *Wait signal—Beginning crossing prohibited.*—A pedestrian may not start to cross the roadway in the direction of a 'wait signal'.

"(e) *Same—Partially completed crossing.*—If a pedestrian has partly completed crossing on a 'walk' or 'walking person' signal, the pedes-

## I.

This action is based on an incident where Sue Ann Absolon was struck by an automobile driven by Paul Dollahite at the intersection of Route 355, also known as Rockville Pike, and Church/Monroe Street, in Montgomery County. Absolon was on her way home from work, and had to cross Rockville Pike westbound at its intersection with Church/Monroe Street. She waited for the pedestrian signal to turn to "walking person" before starting to cross the street in the marked crosswalk. The signal turned to a flashing "red hand" when Absolon reached the median. After checking for oncoming traffic, Absolon left the median to continue crossing Rockville Pike. She was almost at the west curb when she was struck by Dollahite's automobile. Dollahite was making a right turn from east bound Monroe Street onto south bound Rockville Pike.

According to the record, the relevant traffic signals work in the following fashion. The "walking person" signal, facing pedestrian traffic crossing Rockville Pike from east to west, on the south side of the intersection, starts simultaneously with the beginning of the "red" signal for vehicular traffic controlling north and south bound traffic on Rockville Pike, and a "green" signal for traffic going east and west on Monroe/Church Street. After the first 6.65 seconds, the crosswalk traffic signal converts from the "walking person" to a flashing "red hand" for 23.31 seconds. The vehicular traffic signals remain unchanged during this time, with a green light for Church/Monroe Street traffic. At the end of the 23.31 seconds, the crosswalk signal turns to a steady "red hand" for 6.31 seconds. During this 6.31 seconds, the vehicular traffic signal remains red on Rockville Pike, but the other signal changes from "green" to "amber" for traffic on Church/Monroe Street. The signals then change to green for traffic on Rockville Pike, and to red for traffic on Church/Monroe Street. The defendants' expert testified based on a sampling

---

trian shall proceed without delay to a sidewalk or safety island while the 'don't walk', 'wait', or 'upraised hand' signal is showing."

of 20 pedestrians observed between 5:25 p.m. and 6:20 p.m. on August 17, 2000, that it took a pedestrian eight to ten seconds to cross from the median strip to the west curb of Rockville Pike.

At the time of the accident that forms the basis for this action, the signal for vehicular traffic turning from Monroe/Church Street was green, and the pedestrian signal for pedestrian traffic crossing Rockville Pike was a flashing "red hand."

## II.

Sue Ann Absolon and her husband filed this tort action in the Circuit Court for Montgomery County. In the initial complaint, the Absolons asserted claims based on negligence and loss of consortium against Dollahite. They later amended the complaint to include Dollahite's employer, Garza, Regan, Rosenblatt and Soto ("Garza"), based on the discovery that, at the time of the accident, Dollahite was acting within the scope of his employment.

The defendants filed a motion for summary judgment, contending that the Absolons' claims were barred by Sue Ann Absolon's contributory negligence. Dollahite and Garza based the defense of contributory negligence on § 21–203 of the Transportation Article. The defendants asserted that the median strip was a "safety island" within the meaning of statute, and that the statute imposed an absolute duty on the pedestrian to stay on the median strip when the signal changed to a "flashing hand." Dollahite and Garza pointed out that the statute did not distinguish between a steady and flashing signal and that, therefore, the pedestrian had a duty to wait on the median strip once the signal had changed from a "walking person" to a "flashing hand." The defendants asserted that when Sue Ann Absolon stepped off the median strip in the face of a "flashing hand" signal, she violated her statutory duty, establishing contributory negligence as a matter of law.

After hearing oral argument, Judge Chapin of the Circuit Court denied the motion. On the day trial was to commence before Judge Beard of the Circuit Court, Garza and Dollahite asked that the motion for summary judgment be reconsidered. Following oral argument, Judge Beard granted the motion for summary judgment, stating as follows:

"[I]t is abundantly clear that the upraised hand is a no walk signal. . . .

"Also the statute is mandatory; . . . in its language it says, 'shall not', and the word 'shall' is almost never legislatively used without the specific intent of making it mandatory.

"It says: 'The pedestrian shall not depart from either the curb or the island,' and if you look at the language in its entirety, the facts of this case are uncontested that that is what was done.

"Essentially, . . . it is . . ., contributory negligence *per se.*"

The Absolons appealed, and the Court of Special Appeals affirmed. *Absolon v. Dollahitte,* 142 Md.App. 706, 791 A.2d 986 (2002). In its opinion, the Court of Special Appeals stated "that Sue Ann [Absolon] was in express violation of Section 21–203 of the Transportation Article when she stepped off of the median after the flashing red hand had appeared, thereby rendering her contributorily negligent as a matter of law." *Absolon v. Dollahitte, supra,* 142 Md.App. at 709, 791 A.2d at 988. The Court of Special Appeals acknowledged that, under Maryland law, "[i]n most cases, while the violation of a statute is evidence of negligence, it is not considered negligence *per se.*" *Ibid.* Nonetheless, according to the appellate court, "a pedestrian's violation of Section 21–203 constitutes negligence as a matter of law." *Ibid.* In reaching this conclusion, the intermediate appellate court relied on *Parker v. Davis,* 900 F.Supp. 788, 793 (D.Md.1995), where the federal court noted that there was "no distinction [in § 21–201] between flashing 'Don't walk' signals and signals which are constantly lit." The Court of Special Appeals held that the duty imposed by the statute was "absolute," that Sue Ann Absolon violated this

duty when she stepped off the median in the face of a flashing "red hand" signal, and that her action rendered her contributorily negligent as a matter of law. *Absolon v. Dollahitte,* 142 Md.App. at 710, 791 A.2d at 989.

The Absolons then petitioned this Court for a writ of certiorari, which we granted. *Absolon v. Dollahite,* 368 Md. 526, 796 A.2d 695 (2002).

## III.

We shall hold that the alleged violation of § 21–203 of the Transportation Article constituted, at most, evidence of contributory negligence that should have been submitted to the jury. The violation of the statute did not establish contributory negligence as a matter of law, and the grant of summary judgment was improper.

The trial court can properly grant summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgement is entered is entitled to judgment as a matter of law." Maryland Rule 2–501(e). *See, e.g., Tyma v. Montgomery County,* 369 Md. 497, 503–504, 801 A.2d 148, 152 (2002); *Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675–676, 766 A.2d 617, 624–625 (2001); *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000); *Williams v. Mayor and City Council of Baltimore,* 359 Md. 101, 113, 753 A.2d 41, 47 (2000); *Brown v. Dermer,* 357 Md. 344, 354–355, 744 A.2d 47, 53 (2000); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144–145, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Ungar v. Handelsman,* 325 Md. 135, 146–147, 599 A.2d 1159, 1164 (1992).

In the instant case, the fact that Sue Ann Absolon stepped off the median strip in the face of a flashing "red hand" signal is undisputed. The trial court held, as a matter of law, that § 21–203 of the Transportation Article established an "absolute duty" for a pedestrian to remain on the median strip once the "red hand" signal began flashing. Therefore, under the

court's holding, Sue Ann violated this duty when she stepped off the median strip. The violation of the statutory duty was contributory negligence *per se*, according to the trial court, and summary judgment was an appropriate disposition. The Court of Special Appeals, when it affirmed the trial court's judgment, also held that § 21–203 established an absolute duty and that its violation established contributory negligence *per se*.

"[I]t is an 'established rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment,' " *Eid v. Duke*, 373 Md. 2, 10, 816 A.2d 844, 849 (2003), quoting *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 729 (2001) (some internal quotation marks omitted). *See also Wolfe v. Anne Arundel County*, 374 Md. 20, 32, 821 A.2d 52, 59 (2003). Thus, we restrict our review of the case at bar to the sole issue of whether the alleged violation of § 21–203 established Sue Ann Absolon's contributory negligence as a matter of law.

The trial court's holding of absolute duty and negligence as a matter of law, based on a statutory provision, is contrary to the long established general rule in Maryland that the violation of a statutory duty is only evidence of negligence, but does not establish negligence *per se*. *See, e.g., Brown v. Dermer, supra,* 357 Md. 344, 358–359, 744 A.2d 47, 55; *Bentley v. Carroll,* 355 Md. 312, 325–326, 734 A.2d 697, 704–705 (1999); *County Commissioners of Garrett County v. Bell Atlantic–Maryland, Inc.,* 346 Md. 160, 179, 695 A.2d 171, 181 (1997); *Dennard v. Green,* 335 Md. 305, 315–316, 643 A.2d 422, 427 (1994); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., supra,* 335 Md. 135, 155, 642 A.2d 219, 229; *Brady v. Ralph M. Parsons Co.,* 327 Md. 275, 294, 609 A.2d 297, 306 (1992); *Atlantic Mutual Ins. Co. v. Kenney,* 323 Md. 116, 124, 591 A.2d 507, 510–511 (1991); *Erie Ins. Co. v. Chops,* 322 Md. 79, 84, 585 A.2d 232, 234 (1991); *Volkswagen of America v. Young,* 272 Md. 201, 218, 321 A.2d 737, 746 (1974); *Nicholson v. Page,* 255 Md. 659, 664, 259 A.2d 319, 322 (1969); *McLhin-*

*ney v. Lansdell Corp.,* 254 Md. 7, 14–15, 254 A.2d 177, 181 (1969); *Paramount Development Corp. v. Hunter,* 249 Md. 188, 193, 238 A.2d 869, 871 (1968); *Weishaar v. Canestrale,* 241 Md. 676, 682, 217 A.2d 525, 529 (1966); *Fowler v. Smith,* 240 Md. 240, 248, 213 A.2d 549, 555 (1965); *Aravanis v. Eisenberg,* 237 Md. 242, 259–260, 206 A.2d 148, 158 (1965); *Liberto v. Holfeldt,* 221 Md. 62, 65, 155 A.2d 698, 700 (1959); *Ford v. Bradford,* 213 Md. 534, 541, 132 A.2d 488, 491–492 (1957); *Miles v. Webb,* 162 Md. 269, 272, 159 A. 782, 784 (1932); *Moura v. Randall,* 119 Md.App. 632, 648, 705 A.2d 334, 342, *cert. denied,* 349 Md. 495, 709 A.2d 140 (1998).

■ The defendants argued in the courts below that the mandatory language in § 21–203(e) (emphasis added), namely, that "the pedestrian *shall* proceed without delay to a sidewalk or safety island while the 'don't walk', 'wait', or 'upraised hand' signal is showing," established an absolute duty, such that its violation was sufficient to establish contributory negligence *per se.* The trial court and the Court of Special Appeals agreed with the defendants. Nonetheless, this interpretation is contrary to the common law rule in negligence actions applied by this Court. Mandatory language in the statute is not sufficient to abrogate the rule that a violation of a statutory duty is merely evidence of negligence, and not negligence *per se.*

A similar incident formed the basis of the action in *Schweitzer v. Brewer,* 280 Md. 430, 374 A.2d 347 (1977). In that case, a pedestrian was struck by an automobile when walking across a pedestrian crosswalk. The pedestrian had entered the crosswalk on a "walk" signal, and, bypassing the median strip, continued crossing when the signal turned to a steady "don't walk." There was no interval with a flashing signal at that crosswalk. The statute in question at the time, Maryland Code (1957, 1970 Repl.Vol.), Art. 66 1/2, § 11–203, provided that "any pedestrian who has partially completed his crossing on the 'walk' signal *shall* proceed without delay to a sidewalk or safety island while the 'don't walk' or 'wait' signal is showing," (emphasis added). This Court, while stating that

the statute imposed a duty on the pedestrian, also held that "the issues of appellee's negligence and appellant's contributory negligence were properly for the jury." *Schweitzer v. Brewer, supra,* 280 Md. at 434, 374 A.2d at 350.

Similarly, in *McLhinney v. Lansdell Corp., supra,* 254 Md. 7, 254 A.2d 177, the statute in question, Code (1957, 1967 Repl.Vol.), Art. 66 1/2, § 235(a), provided (emphasis added):

> "Upon the immediate approach of an authorized emergency vehicle, ... the driver of every other vehicle *shall* yield the right-of-way and *shall* immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and *shall* stop and remain in such position until the authorized emergency vehicle has passed...."

McLhinney, a fireman, brought suit for alleged personal injuries sustained as a result of a collision between a tractor trailer and a fire engine in which he was riding. The trial court granted a directed verdict in favor of the defendants on the grounds that the plaintiff had failed to establish a *prima facie* case of negligence. This Court reversed, pointing to evidence that the defendants had failed to yield the right of way to McLhinney's emergency vehicle, as required by the statute, and saying that "[i]t is well settled in Maryland that a violation of a statute may be evidence or *prima facie* evidence of negligence, although it does not constitute negligence *per se*." *McLhinney v. Lansdell Corp., supra,* 254 Md. at 14, 254 A.2d at 181.

The statute which was violated in *Liberto v. Holfeldt, supra,* 221 Md. 62, 155 A.2d 698, also had similar mandatory language. Code (1957), Art. 66½, § 247, provided as follows (emphasis added):

> "No person driving or in charge of a motor vehicle *shall* permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway."

The defendant, Holfeldt, left her automobile unattended for a short time, with the key in the ignition. The automobile was stolen. Five days later, the stolen automobile, apparently driven by the thief, collided with the automobile of the plaintiff, Liberto, who then sued Holfeldt for personal injuries and property damage, asserting that the statutory violation established negligence. This Court affirmed the trial court's entry of a directed verdict for the defendant, saying that, "[e]ven though the violation of a statute may create a *prima facie* presumption of negligence, the mere breach is not *per se* enough to make a violator thereof liable for damages." *Liberto v. Holfeldt, supra,* 221 Md. at 65, 155 A.2d at 700.

In *Miles v. Webb, supra,* 162 Md. 269, 159 A. 782, the plaintiff was injured when his automobile collided with the defendant's truck, which had been left standing in the public road without a rear light, as required by statute. The statute in question, Code (1924, 1929 Supp.), Art. 56, § 193(3), required that

> "... [e]very vehicle, ... operated or driven on the public highways of the State, at any time when there is not sufficient daylight to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred (200) feet ahead, *shall* be provided with lights, ... provided, however, that the following classes of vehicle shall display under the above conditions not less than the lights next specified, to wit:

> \* \* \*

> "(e) Standing motor vehicles, ... at least one white or tinted light, other than red, visible to the front for a distance of 200 feet, and red to the rear visible for a similar distance carried on the left of such vehicle." (Emphasis added).

The plaintiff asserted that the failure to display the light constituted negligence on the part of the defendant as a matter of law. The jury was so instructed and returned a verdict in favor of the plaintiff. This Court reversed, holding

that the statutory violation established only a *prima facie* case. *Miles v. Webb, supra,* 162 Md. at 272, 159 A. at 784.

■ To reiterate, the settled rule in Maryland is that a statutory violation is evidence of negligence. It does not constitute negligence *per se,* unless a statute expressly makes it so.

■ Section 21–203(e) arguably establishes a duty for pedestrians to remain on or proceed to the nearest safety island. Sue Ann Absolon was standing on a median strip, which may or may not fall within the statutory definition of a "safety island." When she stepped off the median, she may have been in violation of her statutory duty of care. If so, the evidence of the violation should be submitted to the jury, along with any other evidence tending to show contributory negligence or the lack thereof. A violation of the statute alone is not sufficient to establish an absolute duty so as to satisfy the requirement of Maryland Rule 2–501(e) for a grant of summary judgment, "that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Tyma v. Montgomery County, supra,* 369 Md. at 504, 801 A.2d at 152 (internal quotation marks omitted).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*