**Pamela A. HART, et al., Plaintiffs,**

v.

**A.C.E. TAXI, et al., Defendants.**

**Civil Action No. BPG–05–1314.**

United States District Court,
D. Maryland.

July 24, 2006.

---

Michael Patrick Smith, Paul D. Bekman, Salsbury Clements Bekman Marder and Adkins LLC, Baltimore, MD, for Plaintiffs.

Kimberly Zembas Starz, John P. Stabile and Associates, Baltimore, MD, Mark Randall Brown, Law Office of Mark Randall Brown, Towson, MD, for Defendants.

## MEMORANDUM AND ORDER

GESNER, United States Magistrate Judge.

The above-referenced motor vehicle tort case has been referred to me for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). Plaintiffs, Pamela and Raymond Hart, seek damages arising from a motor vehicle accident that occurred on May 19, 2002 in Ocean City, Maryland. The accident involved a collision between a van-style taxicab, which was driven by defendant Rhonda A. Gaunt and in which plaintiff Pamela Hart was a passenger, and a Chevy C–2500 pick-up truck, which was driven by defendant Ollie J. Reed. The two vehicles collided in the left-hand lane of South Baltimore Avenue, a one-way street comprised of either two or three lanes. The collision occurred as defendant Gaunt was driving the taxicab in the left-hand lane and defendant Reed was attempting to enter the left-hand lane to position himself to turn left off of South Baltimore Avenue into an adjacent parking

lot. Plaintiffs argue that defendant Reed is liable as a matter of law due to his failure to attempt his left turn from the left most lane, and alternatively, due to his failure to see the taxicab as he entered the left-hand lane.[1] Currently pending are Plaintiffs' Motion for Partial Summary Judgment, Defendant's Response in Opposition, and Plaintiffs' Reply (Paper Nos. 38, 39, 40). No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, plaintiffs' motion is DENIED.

The primary dispute presented by plaintiffs' motion is whether defendant Reed may be deemed negligent as a matter of law for having breached his statutory and common law duties imposed on motorists while making left turns and lane changes. Plaintiffs first assert that defendant Reed violated his statutory duty to turn left from the extreme left-hand lane. (Paper No. 38 at 6). As recently explained by the Court of Appeals of Maryland, "the long established general rule in Maryland that the violation of a statutory duty is only evidence of negligence, but does not establish negligence *per se.*" *Absolon v. Dollahite,* 376 Md. 547, 831 A.2d 6, 9 (2003). To make out a prima facie case of negligence based on a statutory violation, a plaintiff must show: 1) the violation of a statute designed to protect a specific class of persons; 2) that plaintiff is a member of this class of persons; 3) that the harm suffered by plaintiff is of the type that the statute was intended to protect against; and 4) that the violation was the proximate cause of the plaintiff's injuries. *See*

*Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 835 A.2d 616, 621 (2003) (explaining the elements of negligence based on the violation of a statutory duty). Where there is evidence that the violation of the statute proximately caused the plaintiff's injury, evidence of such violation "is sufficient evidence to warrant the court in submitting the case to the jury on the question of the [defendant's] negligence." *Id.* (internal citations and quotations omitted).

Plaintiffs argue that defendant Reed may be deemed negligent as a matter of law for violating Maryland Code, § 21–601(b) of the Transportation Article. (Paper No. 38 at 6). Section 21–601(b) provides that: "If the driver of a vehicle intends to turn left at any *intersection or crossover,* he shall approach the *intersection or crossover* in the extreme left-hand lane lawfully available to traffic moving in the same direction." (Emphasis added). Plaintiffs argue that defendant Reed violated his statutory duty by attempting to make a left turn into the parking lot from either the center or right lane of the road. In support of this contention, plaintiffs rely on certain portions of defendant Reed's deposition testimony, as well as the deposition testimony of the driver of the taxicab, defendant Gaunt.

Defendant Gaunt testified that she was operating the taxicab in the left most lane, after having just picked up additional passengers at the intersection of Division Street and South Baltimore Avenue. (Paper No. 38, Exh. 1 at 2). As she was proceeding up South Baltimore Avenue,

---

1. Plaintiffs also sued the owners and operators of the taxicab at the time of the accident, A.C.E. Taxi and Alfred O. Dillon, as well as principals of the two drivers, Kay F. Johnson and Robert N. Reed. (Paper No. 1). In addition, defendants Robert Reed and Ollie Reed brought a cross-claim for indemnification, contribution, and subrogation, against defendants A.C.E. Taxi, Dillon, Gaunt, and Johnson, in the event that plaintiffs secure a judgment against them. (Paper No. 9).

On January 24, 2006, this action was dismissed without prejudice as to defendants A.C.E. Taxi and Dillon. (Paper No. 13). Having never been properly served, they are not parties to this case.

defendant Gaunt saw defendant Reed in her rearview mirror when he was "at least two car lengths behind [her taxicab]" in the center lane, but "ten seconds later ... all of a sudden" she witnessed defendant Reed's "left front end making a sharp turn into [her] right fender." (*Id.*).

Defendant Reed testified at his deposition that the accident occurred as he was preparing to make a left turn into a parking lot adjacent to South Baltimore Avenue. (Paper No. 38, Exh. 2 at 4). During examination of defendant Reed by plaintiffs' counsel, the following colloquy took place:

Q. So you were actually making a turn from that center or right lane as opposed to trying to get into the left lane, correct?

A. Yes. When I got into that area, yes. I put my signal light on before that.

(*Id.*, Exh. 2 at 4).

Plaintiffs seize on this testimony as undisputed evidence that defendant Reed attempted to turn directly into the parking lot from the center or right-hand lane without first changing lanes, meaning he would have had to have crossed over the left-hand lane. (*Id.* at 3). Plaintiffs assert that defendant Reed's attempted turn from the center or right lane is a clear violation of § 21–601(b).

As an initial matter, the statute cited by plaintiffs, 21–601(b), cannot apply in this case, because at the time of the accident defendant Reed was attempting to turn into a parking lot and not attempting to turn at an "intersection or crossover."[2] Therefore, 21–601(b) did not impose a duty on defendant Reed to attempt his turn from the extreme left lane. Nevertheless,

as Judge Moylan, writing for the Court of Special Appeals of Maryland, has explained, when a driver turns left from a road or highway into a parking lot, rather than onto another road or highway, "[a] not dissimilar duty [is] imposed" under a separate Maryland statute. *Freudenberger v. Copeland*, 15 Md.App. 169, 289 A.2d 604, 607 (1972) (holding that a driver involved in a collision was not negligent as a matter of law based on his having made a left turn into a parking lot across oncoming traffic). Under Maryland Code, § 21–604(b) of the Transportation Article: "A person may not turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move it right or left on a roadway ... unless the movement can be made with reasonable safety."

Notwithstanding the application of § 21–604(b), however, plaintiffs ignore defendant Reed's earlier deposition testimony in which he flatly contradicted his statement that he attempted to turn off of South Baltimore Avenue from the center or right lane. The following colloquy occurred between defendant Reed and his counsel.

Q. Were you preparing to change lanes prior to making a turn?

A. Oh, yes.

\* \* \* \* \* \*

Q. You were in the process of getting into another lane so that you would be able to make the left-hand turn into the parking lot?

A. That's correct.

(*Id.* at 3).

Assuming that making a left turn into a parking lot without first entering the extreme left-hand lane would violate the rele-

---

**2.** "Intersections and crossovers" are defined in the Transportation Article as areas where separate roadways or highways meet. *See*

Maryland Code, § 21–101(h) and (*l*) of the Transportation Article.

vant statute, § 21–604(b), because such movement cannot be made "with reasonable safety" (and that plaintiffs are in the class intended to be protected by this statute and that this statute was intended to protect against the harm suffered by plaintiffs), plaintiffs have not established that there is no dispute of fact as to whether defendant Reed attempted to turn off of South Baltimore Avenue from the center or right lane. As defendant Reed argues in his opposition, his testimony contained two contradictory statements with regard to whether he first entered the extreme left-hand lane before attempting to make a left turn into the parking lot. (Paper No. 39 at 2). Given the axiom that "[a] district court may not resolve conflicts in the evidence on summary judgment motions," *Podberesky v. Kirwan*, 38 F.3d 147, 157 (4th Cir.1994), the court cannot simply choose which statement is accurate.

■ Accordingly, because there is a genuine dispute of material fact as to whether defendant Reed attempted to turn left from the center or right lane, summary judgment would not be appropriate.

In addition, even if plaintiffs could establish that defendant Reed violated the statute at issue, summary judgment, nevertheless, would not be appropriate. As discussed above, under Maryland law, the violation of a statutory duty is only evidence of negligence, not negligence *per se*. As the Court of Appeals long ago explained, "[t]he distinction between mere 'evidence of negligence' and 'negligence *per se*' is very marked, in that in the former there must be an adjudication as to whether or not the violation constitutes negligence, whereas in the latter negligence necessarily follows the proof of the violation." *Kelly v. Huber Baking Co.*, 145 Md. 321, 125 A. 782, 788 (1924). Contrary to plaintiffs' position, simply making out a prima facie case of negligence by demon-strating a statutory violation does not entitle them to summary judgment on the issue of defendant Reed's liability. Rather, establishing a prima facie case of negligence merely warrants the submission of their case to a trier of fact. "The trier of fact must then evaluate whether the actions taken by the defendant were reasonable under all the circumstances." *Brooks*, 835 A.2d at 621.

■ Accordingly, for the additional reason that Maryland does not recognize the doctrine of negligence *per se*, plaintiffs are not entitled to summary judgment on the issue of defendant Reed's liability.

In their reply memorandum, plaintiffs seemingly abandon their reliance on defendant Reed's deposition testimony suggesting that he attempted to make a left turn from the center or right lane, and argue instead that any dispute on this point is immaterial. (Paper No. 40 at 1). In an attempt to salvage their motion, plaintiffs present a new and alternative argument as to why defendant Reed's conduct in this case entitles them to summary judgment on the issue of defendant Reed's liability. Plaintiffs argue that defendant Reed is negligent as a matter of law because he failed to see the taxicab as he entered the left lane and that this failure proximately caused the accident. (*Id.* at 2).

Although vaguely asserted, plaintiffs' argument appears to rely on the general standard of establishing a prima facie case of negligence. Unlike in a statutory-based negligence action, plaintiffs must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty". *Polakoff v. Turner*, 385 Md. 467, 869 A.2d 837, 843 n. 5 (2005) (noting the distinction) (internal citations omitted).

In support of their alternative argument, plaintiffs quote more of defendant Reed's deposition testimony, specifically, the portion in which defendant Reed stated that at the time of the accident, he did not see the taxicab and is unaware how fast it was traveling. (Paper No. 40 at 2).

Plaintiffs' argument fails for two reasons. First, there is nothing to support the conclusion that defendant Reed's failure to see the taxicab proximately caused the accident. Had defendant Reed seen the taxicab, he may have continued to make his lane change and turn into the parking lot, depending on how far behind him the taxicab had been and at what speed and rate of acceleration a reasonable driver would assume other vehicles would be, or appeared to be, traveling. *See Palmer Ford, Inc. v. Rom*, 216 Md. 165, 139 A.2d 697, 699 (1958) (finding that the failure of a driver to see the vehicle that collided with his own vehicle from behind may not have proximately caused the accident because the driver could have assumed that the other vehicle would heed his turn signal or not attempt to illegally pass him).

It should be emphasized that while defendant Reed testified that he did not see the taxicab, defendant Reed did not testify that he failed to look for any vehicles in the left-hand lane before he prepared to make his lane change and then his left turn. *Cf. Freudenberger*, 289 A.2d at 608 ("It is generally recognized that the duty imposed upon the driver making the left-hand turn is one of exercising reasonable care. He is not charged with the absolute liability of making the left-hand turn at his peril.").

Second, other deposition testimony demonstrates that there is a dispute of fact regarding the possible negligent conduct of defendant Gaunt.[3] Defendant Reed testified that he was attempting to make his left turn when the taxicab "shot up and struck [the] side of [his] vehicle" as he was turning. (Paper No. 40, Exh. 1 at 2). Defendant Reed stated that the taxicab "[c]ame up ... so fast [he] didn't have time to think." (*Id.*). He further testified that he saw the taxicab come out of a side street before he began to make his turn and that "[he] thought everything was perfectly clear until [he] went to get over in [the left] lane to get in the parking lot, and [that the taxicab] was up on [him] so fast it was too late." (*Id.*).

■ Based on defendant Reed's testimony that he "believed everything was perfectly clear" and that the taxicab "shot up" and struck his vehicle, a reasonable jury could find that defendant Reed properly looked for vehicles in the left-hand lane before attempting to change lanes and that the situation appeared reasonably safe to do so. Plaintiffs have not demonstrated that there no dispute of fact as to whether defendant Reed breached his common law duty of reasonable care in this regard.[4]

3. Plaintiffs also argue that any negligent conduct on the part of defendant Gaunt does not absolve defendant Reed of liability for his own negligent conduct. (Paper No. 40 at 2). While it may be the case that any negligence on the part of defendant Gaunt would not absolve defendant Reed of his liability as to plaintiffs, the conduct of defendant Gaunt is still relevant to the question whether defendant Reed was negligent in the first instance. The trier of fact may determine that defendant Gaunt's conduct was the sole cause of the accident which would render defendant Reed not liable in this case.

4. Although not discussed by plaintiffs, defendant Reed arguably violated his statutory duty under Maryland Code, § 21–309(b) of the Transportation Article, which requires a driver intending to change lanes to ensure that it is safe to do so before leaving his lane. Given the conflicting evidence in this case, summary judgment in favor of plaintiffs on this theory would also be inappropriate.

Accordingly, the court finds that there is a genuine dispute of material fact as to whether defendant Gaunt's conduct, specifically, whether she was operating her taxicab at too great a speed or rate of acceleration, and, therefore, was the sole and proximate cause of the accident.

Summary judgment is appropriate when there is no genuine issue of material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this case, when the evidence is viewed in the light most favorable to defendant, the court finds there are genuine issues of material fact as to: 1) whether defendant Reed attempted to turn off of South Baltimore Avenue from the center or right lane; 2) whether defendant Reed took reasonable precautions before entering the left lane; 3) whether defendant Gaunt operated her taxicab at too great a speed or rate of acceleration, and 4) which, if any, of this conduct proximately caused the accident at issue in this case. Accordingly, summary judgment is not appropriate.

For the foregoing reasons, it is HEREBY ORDERED this *24th* day of July, 2006, that Plaintiffs' Motion for Partial Summary Judgment (Paper No. 38)is DENIED.